IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BILLY JONES,

     Plaintiff,

vs.                                                      No. 13 -00741 RB-WPL

ESPANOLA MUNICIPAL SCHOOL DISTRICT,
JANETTE ARCHULETA AND MARTHA FERNANDEZ

     Defendants.
                                    Consolidated with
BILLY JONES,

     Plaintiff,

vs.                                                      No. 13-1253 MV-RHS

CHILDREN, YOUTH AND FAMILIES
DEPARTMENT,

## MOTION TO DISMISS CLAIMS AGAINST JANETTE ARCHULETA
## -AND-
## SUPPORTING MEMORANDUM

COMES NOW Defendant Janette Archuleta (Archuleta), by and through her undersigned

counsel of record, Narvaez Law Firm, P.A. (Henry F. Narvaez and Carlos E. Sedillo), and pursuant

to Fed.R.Civ.P. 12(b)(6) hereby moves this Court for an order dismissing with prejudice the claims

against her from this lawsuit on qualified immunity grounds. Plaintiff has had an opportunity to

review the relief requested in this Motion and opposes the same.  As grounds for this Motion,

Defendant Archuleta provides as follows:

1

(A)    PROCEDURAL AND BACKGROUND INFORMATION

*A Qualified Immunity Stay Is Already In Effect.*

The Court has already established a stay in this case on qualified immunity grounds. Order Granting Motion to Stay Discovery, dated April 7, 2014 [docket no. 33]. Ms. Archuleta requests that the stay of discovery be extended through the resolution of this Motion.

*Overview of Amended Complaint and Allegations Against Defendant Archuleta.*

Janette Archuleta is a former Superintendent of the Espanola Municipal School District. The claims in the Amended Complaint[1] against the School District and Defendant Archuleta center on Mr. Jones', a student at the local high school, expulsion from school because of the tombstone drawings, "other negative imagery" and a "list of hell" depicting the names of fellow classmates. Am. Compl., ¶¶ 34-35, 64. The causes of action plead against Defendant Archuleta are: First Amendment Retaliation (Count II); Equal Protection violation (Count III); and Fourteenth Amendment violation (Count IV). Defendant Archuleta is identified alongside the Espanola Municipal School District in the caption for each of these causes of action. Defendant Archuleta is entitled to qualified immunity on all asserted counts.

The only express reference to Ms. Archuleta is the biographical fact addressing the fact that she was the superintendent and that she was acting within the scope of her employment. Am. Compl., ¶ 5. There is also a generalized allegation that all defendants participated in a September 23, 2010 meeting regarding Mr. Jones' expulsion. Am. Compl., ¶ 60. All causes of action asserted against Defendant Archuleta concern Mr. Jones' expulsion.

---

[1] Docket No. 5, October 31, 2013.

**(B)      Motion to Dismiss Standard**

In evaluating a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), courts must accept as true all well-pleaded allegations of the complaint and construe the allegations in the light most favorable to the plaintiff. Pace v. Swerdlow, 519 F.3d 1067, 1073 (10th Cir. 2008). To survive a motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Ridge at Red Hawk v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 562, 570 (2007) ("[A] plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss") (internal quotation marks and quoted authority omitted).

Under the "plausibility" standard, it is not sufficient that a plaintiff might be able to prove some set of facts in support of a pleaded claim. Id. There must be a reasonable likelihood from the complaint that the plaintiff can muster factual support for the pleaded claims. Id. Furthermore, a plaintiff must plead more than labels, conclusions or a "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555.

A court can begin its motion to dismiss analysis by identifying pleadings that are not entitled to the assumption of truth because they are merely conclusions. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

The Tenth Circuit has noted that complaints involving Section 1983 claims against government actors, such as the one in this case, "pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants." Robbins

3

v. Oklahoma., 519 F.3d 1242, 1249 (10th Cir. 2008).   In Robbins, the 10th Circuit emphasized that the Twombly plausibility standard "may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity at the earliest possible stage of the litigation."   Id. (internal quotations and Supreme Court citations omitted). The Court cautioned plaintiffs that context matters in notice pleading, particularly in Section 1983 cases in which defendants often include government agencies and other government actors in their individual capacities. Id. at 1249-50.   "It is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." Id. at 1250 (emphasis added).

**(C)     The Amended Complaint Does Not Allege Sufficient Facts Against Ms. Archuleta to Survive a Twombly Analysis.**

Case law has long-recognized that personal participation and involvement is necessary in Section 1983 litigation. Id.; see e.g. Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996). As noted in the introduction section, the only time Ms. Archuleta is expressly identified in allegations of the Amended Complaint is in the biographical section. Am. Compl., ¶ 5.   She is also identified in certain count captions. Section 1983 does not authorize liability under a theory of respondeat superior. Brown v. Montoya, 662 F.3d 1152 (10th Cir. 2011) (citing Monell v. Dep't of Soc. Servs., 426 U.S. 658, 691 (1978)).

Applying the Twombly/Robbins analysis the Court should dismiss all claims against Defendant Archuleta for failing to sufficiently articulate "who is alleged to have done what to whom." Id., at 1250.   This is the type of collective pleading containing conclusory legal statements that Robbins guards against. Id.   Robbins makes it clear that the claims against the individual state actor must be "distinguished from collective allegations against the state." Id.

4

Plaintiff's Amended Complaint fails to address any action or inaction by Defendant Archuleta with sufficient specificity to distinguish her actions from the collective actions of the School District that is necessary to survive a Twombly/Robbins analysis. Accordingly, all causes of action pleaded against Janette Archuleta should be dismissed with prejudice.

**(D)    Alternatively, Plaintiff's Amended Complaint Against Defendant Archuleta Cannot Survive a Qualified Immunity Analysis.**

Plaintiff's Amended Complaint asserts that the tombstone and other "disturbing" drawings were created for a therapeutic purpose under the guidance of a therapist. Am. Comp. ¶¶ 34-35. The inference Plaintiff tries to create is that the violent drawings are private student expression. Taylor v. Roswell Independent School District demonstrates that private student expression in public schools is analyzed under Tinker. 713 F.3d 25, 35-39 (10th Cir. 2013). Tinker is the seminal Supreme Court case involving students wearing black armbands in protest of the Vietnam War.[2] The holding in Taylor is that a school can restrict speech when it causes, or has the potential to cause, a "substantial disruption" to a school. Taylor stresses that "[a] disruption need not actually materialize. School officials may act to prevent problems as authorities reasonably forecast substantial disruption or interference with the rights of others". Id., at ¶ 37.

**(1) The Amended Complaint demonstrates the fact of substantial disruption and the reasonable forecast of harm.**

The Amended Complaint (¶ 34) acknowledges that "[t]he art contained images of tombstones with student's names and other negative imagery." The Amended Complaint (¶ 35) acknowledges that Billy Jones discussed the drawings with other students or witnesses in a

---

[2] Tinker v. Des Moines Indep. Comm. School Dist., 393 U.S. 503 (1969), acknowledges there are "special characteristics of the school environment" necessary to protect the educational mission of the school and ensure student safety. In light of the recent wave of school shootings, public schools are expected to maintain a high state of vigilance.

classroom, security officers were called to the classroom, and escorted Mr. Jones from the classroom (¶¶ 28-30).  Plaintiff's Amended Complaint demonstrates on its face both the fact of a substantial disruption to a school environment and the reasonable forecast for actual danger or harm to students and school personnel.

The images involved scenes depicting death and identifies specific student names.  The images were not private once they were brought to the school.  The administrator's actions were reasonable under the Tinker/Taylor standard.

### (2) Plaintiff cannot demonstrate the "clearly established" law elements as to any of his Civil Rights allegations against Archuleta.

In order to overcome a qualified immunity defense, a plaintiff must allege facts sufficient to establish that the plaintiff's constitutional or statutory rights were violated and that the law was sufficiently established at the time of the complained events. Martinez v. Carr, 479 F.3d 1292, 1295 (10th Cir. 2007).  To be "clearly established" the contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right. Albright v. Rodriguez, 51 F.3d 1531, 1535 (1995) (citations omitted).  A public school administrator will be afforded qualified immunity when there is an absence of clearly established law demonstrating that a course of action violates a student's constitutional rights.  Qualified immunity should be recognized if officials of reasonable competence could disagree on whether the particular action was lawful. Hope v. Peizer, 536 U.S. 730, 752 (2002).  The Supreme Court has observed that the protection afforded by qualified immunity is broad, protecting "all but the plainly incompetent or those who knowingly violate the law." Id.

Nothing in Plaintiff's Amended Complaint, or any reasonable inference that could be drawn from the Amended Complaint, to support a conclusion that Defendant Archuleta was plainly incompetent or knowingly violated the law.

6

### *Plaintiff's First Amendment Claim Against Ms. Archuleta Fails.*

Neither the 10th Circuit, nor New Mexico District Courts, appear to have directly confronted the facts plead in this case that attempts to insulate "disturbing" drawings as therapy when the school district considers the drawing and list of name as threatening to students at the school. This absence of clearly established law, alone, is sufficient to merit the qualified immunity for Defendant Archuleta on all counts asserted against her.

To the contrary, West held that a School District suspending a student for drawing a picture of Confederate flag during class in violation of the school district's harassment and intimidation policy was not a first amendment violation. 206 F.3d 1358, 1365-1366 (10th Cir. 2000). The tombstone and other "disturbing" drawing are at least as disruptive as the drawing in West. Moreover, the weight of authority in other districts confront this issue reinforces dismissing Defendant Archuleta on qualified immunity grounds.

In D.F. v. Board of Ed. of Syosset Central School District, a public school student kept, and then brought to the school, a journal depicting similar scenes of death and killing. 386 F.Supp. 2d 119 (USDC-E.D.NY 2005). In D.F., the plaintiff asserted a similar interference with First Amendment rights. The Court holds that the question is whether the school administrators had "reasonable grounds for fearing the plaintiff might carry out the act described." Id., at 128. In D.F., the Court determined that the school administrator's fear created by the student's journal was reasonable. Id. The analysis is from the school administrator's point of view, and not the students.[3] The facts concerning the nature of the potential threat and the school's reaction in D.F. parallel the

---

[3] Plaintiff will likely focus on the recent Supreme Court holding in Brown v. Entm't Merchants Ass'n holding that disgust is not a valid basis for restricting expression. 131 S.Ct. 2728 (2011). However, Brown has limited, if any, utility in this case, because it is not in the public school context and does not deal with the reasonableness of a school administrator's decision.

facts alleged in the Amended Complaint.  The similarity to D.F. supports the same legal conclusion that the decision to expel Plaintiff was reasonable.  Accordingly, Plaintiff cannot demonstrate that Plaintiff's expulsion violated clearly established law.

Porter v. Ascension Parish Sch. Board demonstrates that a Court should tread carefully when evaluating the reasonableness of a school administrator's decisions.  393 F.3d 608, 621 (5th Cir. 2004) (J. Higginbotham) (qualified immunity recognizes that school officials must be allowed to make reasonable mistakes when forced to act in the face of uncertainty).  In Porter, the Fifth Circuit affirmed the granting of qualified immunity for a school administrator facing litigation for expelling a student responsible for a sketch depicting a violent siege.  In Porter, a two-year old sketch depicting a violent siege was accidently taken to a public school by a student's younger brother. The older brother was expelled for terrorizing the school.  Id. at 611-612.  In Porter, the Fifth Circuit determined that the drawing was off-campus speech and could not find that that the two-year old sketch was an intentional communicated threat.  Id. at 621.  While disagreeing with the school administrators' analysis of the sketch as a threat, the Fifth Circuit nonetheless found the school administrator entitled to qualified immunity.  The Court recognized that there was room for discretion in interpreting the sketch and reasonable school administrators could reach different conclusions. Id.

Thus, even accepting as true Plaintiff's classification of the disturbing drawings and list of classmate names as therapeutic art (Am. Compl. ¶¶ 34-95), the Court should nonetheless afford Defendant Archuleta qualified immunity on the grounds that reasonable administrators could reach different conclusions regarding the disruptive effect and threatening nature of the drawing and list of names.

The recent Tenth Circuit case of Taylor v. Roswell Ind. School District, *supra*, and its focus on the potential for school disruption as a reasonable basis to limit certain types of student speech on a public school campus is aligned with the "reasonability" analysis as the Court used in D.F.

Paragraphs 34, 28, and 34 of the Amended Complaint acknowledge that the tombstone and other "disturbing" images and list of student names "for hell" were disturbing and that there was a classroom disturbance. School administrator's reacting to a "disturbing" drawing is reasonable in order to protect the students and, thus, qualified immunity should apply to Ms. Archuleta. There is no case law found which demonstrates a countervailing approach carries the weight of authority. Accordingly, Ms. Archuleta is entitled to qualified immunity on the First Amendment issues.

### *The Amended Complaint provides that a hearing was conducted and thus, Plaintiff's Due Process and Equal Protection Claims Fail.*

Again, the Due Process and Equal Protection claims are silent as to the specific actions taken Ms. Archuleta that would allegedly violated Plaintiff's constitutional rights.

The Amended Complaint asserts a conclusory statement that Plaintiff's expulsion from the School District "served no governmental interest" and was "arbitrary". Am. Compl., ¶¶ 69-72, 77. As noted in the preceding section, the Court should apply a "reasonableness" standard for school administrators in reacting to student threats and school disturbances.

Although the Court should not apply a collective approach in a qualified immunity analysis, based on the allegations in the Amended Complaint, the School District's actions were reasonable in light of the disturbing tombstone images (¶ 34) and the classroom disruption (¶¶ 28, 35). Plaintiff's classification of the drawing as a "therapeutic" (Am. Compl., ¶ 35) is a conclusory statement with limited utility in light of the fact that the reasonableness of the expulsion is from the school administrator's perspective. Moreover, the allegation that the drawing were brought to

the school and created a disturbance -- just as in D.F. The due process claims against Ms. Archuleta should be dismissed.

Porter is also instructive on in addressing the 14th Amendment due process claim. In Porter, the Fifth Circuit applied the Supreme Court's holding in Goss v. Lopez, that in the public school context, expulsion requires, at a minimum, a hearing and notice. 419 U.S. 656, 571-572 (1975). Goss has been consistently applied in this Circuit for nearly forty years.

Plaintiff's Amended Complaint set forth allegations dispositive of the Fourteenth Amendment claim. First, Mr. Jones admitted that the drawings were his. Am. Compl., ¶ 35. This can have the effect of mitigating the need for a hearing. Watson v. Beckel, 242 F.3d 1237 (10th Cir. 2001) (There was no constitutional violation for a student was expelled without a hearing because he admitted his guilt). Second, Plaintiff also alleges that a hearing was conducted. Am. Compl., ¶ 75. Accordingly, on the face of the Amended Complaint, the Goss due process requirements were met.

Moreover, there is nothing in the Complaint to suggest that expelling a student for facts as asserted in the Amended Complaint "shocks the conscience" sufficient to establish a substantive due process violation. See Seamons v. Snow, 84 F.3d 1226, 1236 (10th Cir. 1996). There is no allegation in the Amended Complaint that the process used to expel Mr. Jones shocked the conscious and there are not sufficient allegations set forth in the Amended Complaint to infer any such "conscience shocking" actions. Finally, as discussed above, the facts alleged by Plaintiff concerning the tombstone and other "disturbing" drawings are on par with the drawing in West.

The equal protection claim goes on to allege that Plaintiff was treated differently than a student who had allegedly bullied him the preceding school year because Plaintiff was expelled and the other student was not. Plaintiff alleges that the School District treated Plaintiff differently

that non-disabled students and articulates his disability as PTSD. However, the two instances and students are not viable comparators for equal protection purposes. For instance, Plaintiff doesn't claim that K.A. had PTSD or that K.A. had threatening or disturbing drawings. It appears that the commonalities between the students are that they are each students that rode the same school bus. Because K.A. and Plaintiff are not sufficient comparators, the Court must apply the equal protection "class of one" analysis.

Under a "class of one" analysis, a plaintiff has a "substantial burden" to demonstrate that similarly situated individuals in all material respects were treated differently with no "objectively reasonable basis" for a defendants actions. Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1217 (10th Cir. 2011) (internal quotations and citations omitted) (affirming a motion to dismiss). The Amended Complaint demonstrates that Plaintiff brought "disturbing" drawing of tombstones bearing other students names to school and that these drawing created a disturbance meriting his removal from the classroom. Based on the plain language on the Amended Complaint, there was a reasonable basis for the School District expulsion decision.

## CONCLUSION

For the foregoing reasons, the First Amendment, Due Process, and Equal Protection claims against Defendant Archuleta must be dismissed on qualified immunity grounds.

Respectfully submitted,

**NARVAEZ LAW FIRM, P.A.**

/s/ Henry F. Narvaez
HENRY F. NARVAEZ
CARLOS E. SEDILLO
Attorneys for School Defendants
P.O. Box 25967
Albuquerque, New Mexico 87125-0967
T: (505) 248-0500

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing
electronically through CMECF,
which caused the following parties or
counsel to be served by email,
as more fully reflected on the Notice of Electronic Filing,
on July 21[th], 2014 to:

Joseph P. Kennedy
Shannon L. Kennedy
KENNEDY LAW FIRM
Attorneys for Plaintiff
1000 Second Street NW
Albuquerque, New Mexico 87102

Scott P. Hatcher
Hatcher & Tebo, P.A.
Attorney for Defendant Fernandez
150 Washington Ave., Suite 204
Santa Fe, NM 87501


*/s/  Henry F. Narvaez*
HENRY F. NARVAEZ