Case 1:13-cv-00741-RB-WPL   Document 48-1   Filed 07/30/14   Page 1 of 5


EXHIBIT A

No *Shepard's* Signal™
As of: July 29, 2014 12:46 PM EDT

# Chavez v. Los Lunas Pub. Sch. Dist. ex rel. Bd. of Educ.

United States District Court for the District of New Mexico
November 1, 2010, Filed
No. CIV 10-0507 RB/WDS

**Reporter:** 2010 U.S. Dist. LEXIS 144439

BRENDA CHAVEZ, Plaintiff, vs. LOS LUNAS PUBLIC SCHOOL DISTRICT, EX REL. BOARD OF EDUCATION, ED HERNANDEZ, MARLA M. MAREZ, FRANK A. OTERO, DAN GROSS, CHRISTOPHER MARTINEZ, and MARIO ZUNIGA, individually and in his representative capacity, Defendants.

## Core Terms

sexual harassment, allegations, constructive discharge, misconduct, factual allegations, policymaker, motion to dismiss, scope of duty, high school, duties, resign, assault and battery, municipal liability, deprivation, Damages, Rights, sexual

**Counsel:** [*1] For Brenda Chavez, Plaintiff: Tibo Juan Chavez , Jr., LEAD ATTORNEY, Law Office of Tibo J. Chavez, Jr., Belen, NM.

For Los Lunas Public School District, Board of Education, Ex Rel., Ed Hernandez, Maria M Marez, Frank A Otero, Dan Gross, Christopher Martinez, Mario Zuniga, individually and in his representative capacity, Defendants: Elizabeth L. German, LEAD ATTORNEY, Albuquerque, NM; Terrill E. Pierce, German and Associates, Albuquerque, NM.

**Judges:** ROBERT C. BRACK, UNITED STATES DISTRICT JUDGE.

**Opinion by:** ROBERT C. BRACK

## Opinion

### MEMORANDUM OPINION AND ORDER

This matter came before the Court on Defendants' Partial Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 12), filed on July 6, 2010. Jurisdiction arises under 28 U.S.C. §§ 1331, 1343 (a)(4), and 1367. Having considered the submissions and arguments of counsel, relevant law, and being otherwise fully advised, I find that this Motion should be granted as to the individual Board members and otherwise denied.

**I. Background.**

On November 23, 2009, Plaintiff Brenda Chavez filed her Complaint for Violations of the New Mexico Human Rights Act, Intentional Infliction of Emotional Distress, Assault and Battery, Retaliatory Discharge, and Claims for Damages, in [*2] the Thirteenth Judicial District Court of the State of New Mexico. (Doc. 7-1.) On May 17, 2010, Ms. Chavez filed her First Amended Complaint for Violations of the New Mexico Human Rights Act, Breach of Contract, Violations of Federal Law, Assault and Battery, and Claims for Damages, alleging additional claims under 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, *et seq*. (Doc. 1-2.) On May 26, 2010, Defendants removed the matter to federal court, pursuant to 28 U.S.C. §§ 1441(b) and 1446. (Doc. 1.)

On June 19, 2010, Ms. Chavez filed her Second Amended Complaint for Violations of Federal Law, Breach of Contract, Assault and Battery, and Claims for Damages. (Doc. 9, Second Am. Compl.) Therein, Ms. Chavez alleges as follows.

On October 30, 2006, Ms. Chavez was hired by Los Lunas Public Schools (LLPS). (Second Am. Compl. ¶ 5.) LLPS is governed by the elected Board of Education: Board President Ed Hernandez, Board Vice-President Maria M. Marez, Board Secretary Frank A. Otero, Board Member Dan Gross, and Board Member Christopher D. Martinez. (Second Am. Compl. ¶ 4.) On July 1, 2008, LLPS assigned Ms. Chavez to work as Assistant Principal at Valencia High School. [*3] (Second Am. Compl. ¶ 7.) Defendant Mario Zuniga, Principal at Valencia High School, became Ms. Chavez's direct supervisor. (Second Am. Compl. ¶¶ 8-9.)

During July of 2008, Mr. Zuniga suggested that she accompany him to Jemez mountains so they could baptize each other. (Second Am. Compl. ¶ 11.) Ms. Chavez found this comment odd and confusing so she ignored it. (*Id.*) On August 6, 2008, Mr. Zuniga commented to Ms. Chavez: "Come on Ms. Chavez just let me one time, that's all I need." (Second Am. Compl. ¶ 12.) At first, Ms. Chavez ignored Mr. Zuniga's comments. (*Id.*) Subsequently, Ms. Chavez informed Mr. Zuniga that she did not appreciate his vulgar sexual comments, asked him to stop, and

BRIANNA JAGELSKI

Case 1:13-cv-00741-RB-WPL   Document 48-1   Filed 07/30/14   Page 2 of 5

Page 2 of 5
2010 U.S. Dist. LEXIS 144439, *3

threatened to report him. (Second Am. Compl. ¶ 13.) Mr. Zuniga continued to make sexually explicit and harassing comments. (Second Am. Compl. ¶ 14.)

On or about Friday, February 6, 2009, Mr. Zuniga called Ms. Chavez, while she was on lunch duty, on her work cell phone and asked her to remove her coat. (Second Am. Compl. ¶ 15.) Ms. Chavez took off her coat and Mr. Zuniga told her: "Damn those pants look good, go ahead and file sexual harassment I don't care, I've had it done a hundred times." (*Id.*) Ms. Chavez [*4] turned and saw Mr. Zuniga staring at her through the cafeteria window. (*Id.*) Ms. Chavez informed her husband about Mr. Zuniga's misconduct. (Second Am. Compl. ¶ 16.) However, Ms. Chavez did not report the misconduct to LLPS due to possible negative consequences. (*Id.*) Instead, Ms. Chavez attempted to avoid Mr. Zuniga. (*Id.*)

Mr. Zuniga stated to Ms. Chavez that the high school boys were lucky to have so much sex. (Second Am. Compl. ¶ 24.) Mr. Zuniga bragged to Ms. Chavez that he had gotten away with sexual harassment in the past and he would again get away with it with her. (Second Am. Compl. ¶ 25.) Mr. Zuniga stated to Ms. Chavez: "I can do whatever I want out here, who's gonna check? Who? Nobody's gonna check." (Second Am. Compl. ¶ 26.) Additionally, Mr. Zuniga told her "At some point you have to figure out when you'll sell your soul to the devil." (Second Am. Compl. ¶ 27.)

Ms. Chavez reported Ms. Zuniga's sexual harassment to Melodie Good, an Assistant Principal. (Second Am. Compl. ¶ 16.) Ms. Chavez hoped Ms. Good would assist Ms. Chavez and that an investigation and disciplinary proceedings upon Mr. Zuniga would ensue. (Second Am. Compl. ¶ 17.) Instead, Ms. Good recounted how Mr. [*5] Zuniga had gotten away with prior incidents of sexual harassment, including a sexual assault of Kim Griego, another LLPS employee. (Second Am. Compl. ¶ 18.) Although these incidents had been reported, LLPS failed to discipline Mr. Zuniga. (*Id.*) However, Ms. Griego had been moved away from Mr. Zuniga and placed at the Freshman Academy as Ms. Good's secretary. (*Id.*)

On May 29, 2009, after a meeting, Mr. Zuniga blocked Ms. Chavez from leaving his office after a meeting. (Second Am. Compl. ¶ 19.) Mr. Zuniga forcefully pressed his body against Ms. Chavez, and kissed her. (*Id.*) Ms. Chavez was disgusted and immediately left the building. (*Id.*)

Ms. Chavez reported the sexual assault to LLPS Administrator Lena Mae Chavez and Ms. Good, who failed to take any action. (Second Am. Compl. ¶ 20.) Subsequently, Ms. Chavez reported the matter to Dana Sanders, Assistant Superintendent at LLPS. (Second Am. Compl. ¶ 22.) LLPS Superintendent Bernard Saiz was apprised of Mr. Zuniga's misconduct. (Second Am. Compl. ¶ 31.)

LLPS knew, or should have known, of other prior acts of sexual harassment by Mr. Zuniga. (Second Am. Compl. ¶ 34.) LLPS failed to properly investigate Ms. Chavez's reports of sexual assault [*6] and harassment and failed to take corrective action. (Second Am. Compl. ¶ 48.) LLPS refused to remove Mr. Zuniga from his position at Valencia High School and left Ms. Chavez under his direct supervision. (Second Am. Compl. ¶ 33.) The inadequate response to the sexual harassment and assault thwarted Ms. Chavez's efforts to obtain administrative relief and deprived her of due process. (*Id.*)

Additionally, Mr. Zuniga refused to support Ms. Chavez in disciplining LLPS teacher Staci March, who had been insubordinate to Ms. Chavez. (Second Am. Compl. ¶ 36.) Ms. March worked on special projects for Mr. Zuniga at Valencia High School. (Second Am. Compl. ¶ 38.) Mr. Zuniga improperly disclosed personal matters about Ms. Chavez to Ms. March. (*Id.*) Ms. March made threats against Ms. Chavez' life, which Chavez reported to LLPS. (*Id.*) Despite the proof presented by Ms. Chavez of the threats, LLPS refused to properly investigate or take remedial action against Ms. March. (Second Am. Compl. ¶ 37.) LLPS moved Ms. March to Century High School and promoted her from teacher to IEP facilitator. (*Id.*)

The hostile work environment created by LLPS unreasonably interfered with Ms. Chavez's work performance. [*7] (Second Am. Compl. ¶ 39.) After LLPS asked Mr. Zuniga to sign an agreement that he would cease further sexual harassment of Ms. Chavez, Mr. Zuniga began to retaliate against Ms. Chavez. (*Id.*) Mr. Zuniga berated Ms. Chavez and tried to have her fired unjustly. (Second Am. Compl. ¶ 41.)

LLPS failed to take any remedial action against Mr. Zuniga, despite Ms. Chavez' complaints to Ms. Sanders and Mr. Saiz of continued misconduct. (Second Am. Compl. ¶ 43.) Mr. Zuniga's campaign of retaliation against Ms. Chavez continued for approximately five months. (Second Am. Compl. ¶ 44.) The offensive and wrongful conduct of Mr. Zuniga and LLPS directly impacted Ms. Chavez and caused her to suffer physical and emotional illnesses. (Second Am. Compl. ¶ 50.)

The working conditions were so difficult that a reasonable person in Ms. Chavez's position would feel compelled to resign. (Second Am. Compl. ¶ 51.) Due to the intentional infliction of stress and hostile working environment, Ms. Chavez was forced to resign from her employment at

LLPS. (Second Am. Compl. ¶ 52.) Ms. Chavez has required treatment by physicians and mental health professionals and has incurred monetary damages for loss of income and benefits. [*8] (*Id.*)

Ms. Chavez asserts the following causes of action: (1) sexual harassment, hostile work environment, and sex discrimination under Title VII against LLPS; (2) deprivation of civil rights under *42 U.S.C. § 1983* against LLPS; (3) breach of contract and constructive discharge against LLPS; (4) assault and battery against Mr. Zuniga, and (5) tortious interference with contract against Mr. Zuniga. (Second Am. Compl. ¶¶ 56-94.) Ms. Chavez seeks compensatory and punitive damages, interest, attorney's fees, and costs. (*Id.*)

In their Partial Motion to Dismiss Plaintiff's Second Amended Complaint, Defendants move for dismissal of some of the claims pursuant to *Federal Rule of Civil Procedure 12(b)(6)*. More specifically, Defendants contend that: (1) the allegations in the Second Amended Complaint do not support the *§1983* claim; (2) the allegations in the Second Amended Complaint do not support the constructive discharge claim; and (3) the New Mexico Tort Claims Act (NMTCA), *N.M. Stat. Ann. § 41-4-4(A)*, does not waive sovereign immunity for the state-law tort claims. (Doc. 13.)

Ms. Chavez responds that LLPS failed to correct a pattern of misconduct, the factual allegations support the constructive [*9] discharge claim, and sovereign immunity is inapplicable because Mr. Zuniga acted outside the scope of his duties.

In their reply brief, Defendants state that isolated instances of official misconduct are insufficient to establish municipal liability, the factual allegations are insufficient to establish constructive discharge, and Mr. Zuniga acted within the scope of his duties for purposes of the NMTCA.

## II. Standard.

*Federal Rule of Civil Procedure 12(b)(6)* authorizes a court to dismiss for failure to state a claim. In 2007, the United States Supreme Court announced "a new (or clarified) standard: to withstand a motion to dismiss, a complaint must contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Robbins v. Okla., 519 F.3d 1242, 1247 (10th Cir. 2008)* (quoting *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 564, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))*. The Supreme Court explained in Twombly that "a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." *Id.* (internal citation and brackets omitted). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded [*10] claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Id.*

Under *Twombly*, *Rule 12(b)* motions "ask whether there is 'plausibility in [the] complaint.'" *Christy Sports, LLC v. Deer Valley Resort Co., 555 F.3d 1188, 1191 (10th Cir. 2009)* (quoting *Twombly, 550 U.S. at 564*). In order to survive a *Rule 12(b)(6)* motion, the complaint "does not need detailed factual allegations," *Twombly, 550 U.S. at 555*, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The question is whether, if the allegations are true, it is plausible, and not merely possible, that the plaintiff is entitled to relief under the relevant law. *Robbins, 519 F.3d at 1247*.

## III. Discussion.

### A. Municipal liability.

Mr. Chavez has named the individual Board members as Defendants, yet she did not specify whether they were sued in their individual or official capacities.[1] "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." See *Kentucky v. Graham, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)*. Therefore, any claim against the [*11] individual Board members in their official capacities would be equivalent to a claim against LLPS.

Municipal liability of LLPS is limited to situations in which the deprivation of constitutional rights results from an official policy or custom of LLPS. "Under *Section 1983*, municipalities cannot be held liable for the actions of others under the common law principle of respondeat superior; they are responsible only for their own actions." *Simmons v. Uintah Health Care Special Dist., 506 F.3d 1281, 1284 (10th Cir. 2007)* (citing *Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)* and *Pembaur v. City of Cincinnati, 475 U.S. 469, 483, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)* (plurality)).

In order to establish municipal liability under *§ 1983*, a plaintiff must allege facts demonstrating that she suffered a constitutional deprivation resulting from an established policy, a longstanding practice or custom, or the conduct or decision of a final policymaker for the municipality. *Moss v. Kopp, 559 F.3d 1155, 1168-69 (10th Cir. 2009)*. In

---

[1] The individual Board members have not been served.

BRIANNA JAGELSKI

Case 1:13-cv-00741-RB-WPL   Document 48-1   Filed 07/30/14   Page 4 of 5

Page 4 of 5
2010 U.S. Dist. LEXIS 144439, *11

*Moss*, the Tenth Circuit addressed the sufficiency of a complaint to state a *§ 1983* claim against a county based on conduct by law-enforcement [*12] officers. The court determined the complaint to be insufficient because it did not allege that a final policymaker took any unconstitutional action or approved the allegedly unconstitutional conduct at issue, or that the conduct occurred pursuant to a decision made by a policymaker. See *Moss, 559 F.3d at 1169*.

In this case, however, Ms. Chavez has alleged minimally sufficient facts, that, if taken as true and viewed in the light most favorable to Ms. Chavez, could support a finding that Mr. Saiz was a policymaker for LLPS and he endorsed Mr. Zuniga's conduct. See *Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)* ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). In reaching this determination, the Court has assumed, without deciding, that Mr. Saiz, the Superintendent of LLPS, may have had final policymaking authority with regard to procedures for the redress of allegations of sexual harassment by an employee. See *Randle v. City of Aurora, 69 F.3d 441, 447-48 (10th Cir. 1995)* (determination of final policymaking authority requires examination [*13] of the chain of legal authority; it is a legal issue to be determined based on state and local law).

Ms. Chavez has alleged that Mr. Saiz had the legal authority to oversee employees of LLPS. (Second Am. Compl. ¶ 47.) If Ms. Chavez's factual allegations are accepted, a reasonable inference may be drawn that a final policymaker for LLPS was informed that Mr. Zuniga had sexually harassed employees under his supervision and that he tacitly condoned this misconduct. The Second Amended Complaint is sufficient to state a claim for municipal liability under *§ 1983* against LLPS.

### B. Liability of the individual Board members.

The Second Amended Complaint contains no specific factual allegations as to the individual Board members. These Defendants may not be held liable under *§ 1983* merely because of their supervisory positions as Board members. See *Pembaur v. City of Cincinnati, 475 U.S. 469, 479, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)*. Rather, there must be "an affirmative link . . . between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009)*. It bears underscoring that [*14] personal participation is an essential element of a *§ 1983* action. See *Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997)*.

Additionally, Ms. Chavez has failed to identify any acts or omissions taken by the individual Board members. The Supreme Court in *Twombly* criticized complaints that "mentioned no specific time, place, or person involved in the alleg[ations] . . ." *Twombly, 550 U.S. at 565 n. 10*. Contrary to the *Twombly* standard, Ms. Chavez has clearly failed to "isolate the allegedly unconstitutional acts of each defendant." *Id*. Moreover, the Tenth Circuit has criticized the use of the "collective term 'Defendants' . . . . with no distinction as to what acts are attributable to whom" because "it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Robbins, 519 F.3d at 1250*. In that the Second Amended Complaint contains no specific factual allegations as to the individual Board members, it fails to state any plausible claim as to these Defendants. The Motion to Dismiss will be granted as to these Defendants.

### C. Constructive discharge.

Constructive discharge occurs when an employer "unlawfully creates [*15] working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign." *Strickland v. United Parcel Serv., Inc., 555 F.3d 1224, 1228 (10th Cir. 2009)* (quotation omitted); see also *Derr v. Gulf Oil Corp., 796 F.2d 340, 343-44 (10th Cir. 1986)*. "The standard is objective: the employer's subjective intent and the employee's subjective views on the situation are irrelevant." *Id*. If an employee resigns of her own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged. See *Yearous v. Niobrara County Mem'l Hosp., 128 F.3d 1351, 1356 (10th Cir. 1997)*. Essentially, a plaintiff must show that she had no other choice but to resign her employment. *Id*. Whether a constructive discharge occurred is a question of fact. *Id*.

Ms. Chavez has alleged that she was forced to resign due to the sexual harassment and retaliation inflicted upon her. Based on the factual allegations contained in the Second Amended Complaint, it is plausible that Ms. Chavez could be entitled to relief for breach of contract based on constructive discharge. The Second Amended Complaint is sufficient to state a claim [*16] for constructive discharge against LLPS.

### D. Immunity.

The Second Amended Complaint alleges state-law claims for assault and battery against Mr. Zuniga, and tortious interference with contract against Mr. Zuniga. Defendants argue that the statelaw claims are barred because the NMTCA does not waive sovereign immunity for these causes of action. Ms. Chavez counters that the NMTCA is inapplicable because Mr. Zuniga acted outside the scope of his duties.

Mr. Zuniga's argument misconstrues the statutory scheme of the NMTCA. See *Vigil v. State Auditor's Office, 2005 NMCA 96, 138 N.M. 63, 67, 116 P.3d 854, 858 (Ct. App. 2005)* (rejecting similar argument). Under the NMTCA, the State is only liable for torts committed by public employees while acting within their "scope of duties." See *N.M. Stat. Ann § 41-4-4(D)*. The NMTCA defines "scope of duties" as "performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance." *N.M. Stat. Ann. § 41-4-3(G)*.

The scope of duties is not limited to acts "officially requested, required or authorized because, contrary to legislative intent, it would render all unlawful acts, [*17] which are always unauthorized, beyond the remedial scope of the [NM]TCA." *Celaya v. Hall, 2004 NMSC 5, 135 N.M. 115, 121, 85 P.3d 239, 245 (2004)*. In order for an act to be within the scope of duties "there must be a connection between the public employee's actions at the time of the incident and the duties the public employee was "requested, required or authorized" to perform." *Id.* (citing *N.M. Stat. Ann. § 41-4-3(G)*).

Ms. Chavez alleges Mr. Zuniga committed the torts while he was supervising her. The NMTCA "clearly contemplates including employees who abuse their officially authorized duties, even to the extent of some tortious and criminal activity." *Id.* (discussing *Risk Mgmt. Div. v. McBrayer, 2000 NMCA 104, 129 N.M. 778, 783, 14 P.3d 43, 48 (Ct. App. 2000))*. Although allegedly tortious, the actions may have been within Mr. Zuniga's scope of duties.

Whether an employee is acting within the scope of duties is generally a question of fact, and dismissal is not appropriate unless "only one reasonable conclusion can be drawn" from the facts presented. *Celaya, 135 N.M. at 121, 85 P.3d at 245* (citing *Medina v. Fuller, 1999 NMCA 11, 126 N.M. 460, 466, 971 P.2d 851, 856 (Ct. App. 1998))*; see also *McBrayer, 129 N.M. at 786, 14 P.3d at 51*. [*18] In this case, the record has not been developed on this issue. At this stage of the proceedings, it would be inappropriate to dismiss these claims as barred by the NMTCA.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Partial Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 12), filed on July 6, 2010, is **GRANTED** as to the individual Board members and otherwise **DENIED**.

/s/ Robert C. Brack

ROBERT C. BRACK

UNITED STATES DISTRICT JUDGE

BRIANNA JAGELSKI