IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BILLY JONES,

    Plaintiff,

vs.                                                       No. 13-cv-00741 RB/WPL

ESPANOLA MUNICIPAL SCHOOL
DISTRICT, JANETTE ARCHULETA
and MARTHA FERNANDEZ,

    Defendants.

                                            Consolidated with

BILLY JONES,

    Plaintiff,

vs.                                                       No. 13-cv-01250 RB/WPL

CHILDREN YOUTH AND FAMILIES DEPARTMENT,

    Defendant.

**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS CLAIMS AGAINST
JANETTE ARCHULETA AND SUPPORTING MEMORANDUM**

    Plaintiff, through counsel, Kennedy Kennedy & Ives, LLC (Joseph P. Kennedy), hereby responds to Defendant Janette Archuleta's Motion to Dismiss and Supporting Memorandum, Document 45, filed 07/21/14 (hereinafter "Motion"). Defendant's Motion must be denied because it fails to cast Plaintiff's Amended Complaint in the light most favorable to him and because clearly established law sufficiently put Defendant on notice that her conduct in expelling Plaintiff was unconstitutional so as to bar the application of the doctrine of qualified immunity. In further support of these contentions Plaintiff states:

1

## I.  INTRODUCTION

Defendant's Motion must be denied. At this stage in litigation the allegations in Plaintiff's Complaint must be cast in the light most favorable to him. Under that light, the factual allegations of Plaintiff's Amended Complaint make out prima facie claims of violation of his First Amendment rights and Fourteenth Amendment right to due process under clearly established law. This finding results because Plaintiff's Complaint does not state that he voluntarily shared the drawings at issue or their contents with any person so as to constitute a "true threat" under First Amendment jurisprudence. Furthermore, Plaintiff's Complaint sufficiently alleges violation of his right to due process insofar as it asserts that his expulsion was arbitrary. However, to the extent that the Court finds his Complaint lacking, Plaintiff requests leave to amend.

## II.  ARGUMENTS

The standard to be applied to a motion to dismiss is a high one. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's amended complaint alone is legally sufficient to state a claim for which relief may be granted." Brokers' Choice of Am., Inc. v. NBC Universal, Inc., --- F.3d ----, 2014 WL 3307834, *4 (10th Cir. 2014) (quoting Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991)). This standard is a high one because "[a]ll well-pled factual allegations are accepted as true and viewed in the light most favorable to the nonmoving party." Id.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 550, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations, quotation marks, and alterations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v.

Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Factual allegations must be enough to raise the right to relief above the speculative level." Twombly, 550 U.S. at 555, 127 S.Ct. 1955.

Id. "We will not dismiss a complaint 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Butler v. Rio Rancho Pub. Sch. Bd. of Educ., 341 F.3d 1197, 1199 (10th Cir. 2003) (citation omitted). A district court's findings in this regard are reviewed *de novo*. Id. It is imperative that the facts underlying a motion to dismiss be cast in the light most favorable to the party opposing the motion where qualified immunity is at issue. As the Supreme Court recently reiterated in Tolan v. Cotton, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014):

> [i]n resolving questions of qualified immunity … courts engage in a two-pronged inquiry. The first asks whether the facts, "[t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a [federal] right [.]" Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)...
>
> The second prong of the qualified-immunity analysis asks whether the right in question was "clearly established" at the time of the violation. Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Governmental actors are "shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Ibid. "[T]he salient question ... is whether the state of the law" at the time of an incident provided "fair warning" to the defendants "that their alleged [conduct] was unconstitutional." Id., at 741, 122 S.Ct. 2508.
>
> Courts have discretion to decide the order in which to engage these two prongs. Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. See Brosseau v. Haugen, 543 U.S. 194, 195, n. 2, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam ); Saucier, supra, at 201, 121 S.Ct. 2151; Hope, supra, at 733, n. 1, 122 S.Ct. 2508. This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a "judge's function" at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S., at 249, 106 S.Ct. 2505…
>
> Our qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant, even when, as here, a court decides only the clearly-established prong of the standard. In cases alleging unreasonable searches or

3

> seizures, we have instructed that courts should define the "clearly established" right at issue on the basis of the "specific context of the case." Saucier, supra, at 201, 121 S.Ct. 2151; see also Anderson v. Creighton, 483 U.S. 635, 640–641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Accordingly, courts must take care not to define a case's "context" in a manner that imports genuinely disputed factual propositions. See Brosseau, supra, at 195, 198, 125 S.Ct. 596 (inquiring as to whether conduct violated clearly established law "'in light of the specific context of the case'" and construing "facts ... in a light most favorable to" the nonmovant).

Id. at 1865-66. These standards similarly apply to a Rule 12(b)(6) motion as the standards for finding qualified immunity are effectively the same. See Butler v. Rio Rancho Pub. Sch. Bd. of Educ., 341 F.3d 1197, 1200 (10th Cir. 2003).

The perspective that a court must take on a dispositive motion is, therefore, to be slanted in favor of the non-movant, even where the issue is qualified immunity which has historically shifted the burden of proof onto the shoulders of the plaintiff. See Cruz v. City of Laramie, Wyo., 239 F.3d 1183. 1187 (10th Cir. 2001). This is most likely because "even as to action less than an outrage, 'officials can still be on notice that their conduct violates established law ... in novel factual circumstances.'" Safford Unified Sch. Dist. No. 1 v. Redding, 557 U.S. 364, 377-78 (2009). To wit, the Tenth Circuit recently reiterated:

> [o]rdinarily ... for a rule to be clearly established there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. However, … there will almost never be a previously published opinion involving exactly the same circumstances. We cannot find qualified immunity wherever we have a new fact pattern. Indeed, the Supreme Court has warned that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). The Hope decision shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional.

Fancher v. Barrientos, 723 F.3d 1191, 1201 (10th Cir. 2013) (quoting Casey v. City of Federal Heights, 509 F.3d 1278, 1284 (10th Cir. 2007)). Plaintiff asserts that Defendant's Motion cannot

4

meet these standards because, in the light most favorable to him, Plaintiff's Amended Complaint makes out a prima facie case of violation of his First and Fourteenth Amendment rights and that the state of the case law as to those claims was sufficiently established so as to put Defendant on fair notice that her conduct in expelling Plaintiff in this case was unconstitutional and violative of his rights.

### A) Defendants' Motion is not sufficient to defeat Plaintiff's claims as alleged in the Amended Complaint; however, to the extent that Plaintiff's factual allegations in the Complaint are insufficient, he should be granted leave to amend it in the interests of justice.

Generally speaking, when a court is alerted to the presence of a defect in a Complaint under Rule 8(a)(2) of the Federal Rules of Civil Procedure, that court must determine the propriety of allowing the plaintiff to amend his Complaint. See Ashcroft v. Iqbal, 556 U.S. 662, 687 (2009) ("The Court of Appeals should decide in the first instance whether to remand to the District Court so that respondent can seek leave to amend his deficient complaint."). In fact, "the preferred practice is to accord a plaintiff notice and an opportunity to amend his complaint before acting upon a motion to dismiss for failure to state a claim[.]" See McKinney v. State of Okl., Dept. of Human Services, Shawnee OK, 925 F.2d 363, 365 (10th Cir. 1991); see also Lindsey v. Thomson, 275 F. App'x 744, 747 (10th Cir. 2007) (unpublished) (Ordinarily, the Court would be required to grant the Plaintiff leave to amend before dismissing this action pursuant to Fed.R.Civ.P. 12(b)(6).") (citing (McKinney, 925 F.2d at 365); see generally Conley v. Gibson, 355 U.S. 41, 45-46 (1957) ("In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."); see, e.g., Dicino v. Garcia, 2014 WL 3746961, *4 (D. Colo. July 30, 2014) (unpublished) ("Given that the Court should grant leave to amend "freely ... when

5

justice so requires," Fed.R.Civ.P. 15(a)(2), the Court finds that Plaintiff should here be permitted to file his Fourth Amended Complaint with this change."). The only caveat to this standard is if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." Campos v. Las Cruces Nursing Ctr., 828 F. Supp. 2d 1256, 1266 (D.N.M. 2011) (Browning, J.) (quoting Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991); McKinney v. Okla., Dep't of Human Servs., 925 F.2d 363, 365 (10th Cir.1991)). This is a high standard; as articulated by Judge Browning:

> [t]he sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.

Campos, 828 F. Supp. 2d at 1266 (citing Smith v. United States, 561 F.3d 1090, 1097 (10th Cir.2009); Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir.2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir.1991)).

Defendant asserts that Plaintiff's Amended Complaint fails to sufficiently plead her involvement in Plaintiff's expulsion so as to survive a motion to dismiss. Doc. 45 at 4. However, it is plain that a school Superintendent takes an active role in the expulsion of a student of that district. This is reflected in the publically-available Espanola Valley High School Student/Parent Handbook. See, e.g., EVHS Student/Parent Handbook; Code of Conduct/Behavior Expectations, p. 19 available at < http://www.k12espanola.org/files/EVHS/EVHS Student Handbook 2013-2014.pdf>. According to that Handbook Defendant has the final say in any determination that a student is to be expelled. Id. (Stating: "Expulsion - When the unacceptable behavior is very severe, a student will be giving a hearing with the district hearing officer. *The Superintendent will follow State Board of Education Regulation 81.3 In making the final decision.*" (emphasis added)). Plaintiff sufficiently pled that Defendant was the superintendent of the Espanola Public

School District on all times relevant to this litigation so as to implicate her conduct in causing Plaintiff's expulsion. Document 5 (Amended Complaint), filed 10/31/13, ¶ 5. Therefore, Plaintiff's Complaint sufficiently alleges Defendant's involvement for the purpose of defeating a Rule 12(b)(6) motion. However, to the extent that this allegation was insufficient to meet Plaintiff's burden under Rule 8(a)(2) as to this or any other facet of Plaintiff's Amended Complaint, the Court should permit Plaintiff to further amend because his claims thereunder are not futile.

Defendant also argues that the Complaint cannot assert a plausible claim under the First Amendment because Plaintiff "[t]he Amended Complaint acknowledges that Billy Jones discussed the drawings with other students or witnesses in a classroom[.]" Doc. 45 at pp. 5-6. However, Defendant's assertion in this regard misconstrues Plaintiff's Amended Complaint as Plaintiff never avers therein that he voluntarily communicated the contents of his drawings with any person. This is significant, as Plaintiff's Complaint should be viewed primarily through the prism of the First Amendment. Defendant wrongly alleges that Jones admitted in his complaint that he showed the drawings to other students and that he discussed the drawings with other students. Defendant argues that Plaintiff admitted that he showed his drawings to other students based off an unwarranted assumption. This is obviously a key fact in the context of Plaintiff's First Amendment claim and would defeat it if Plaintiff in fact alleged the facts as Defendant is asserting. However, Plaintiff never alleged he showed his drawings to other students. The allegations in paragraphs 28-30 of Plaintiff's Complaint relate clearly to his full disclosure of the purpose of the drawings *after* he was taken to Mrs. Ortega's office and searched. He talked to Mrs. Ortega, a police officer, and a school counselor about the drawings in Mrs. Ortega's office.

7

There is no allegation he showed the drawings to classmates. To the extent that this fact is unclear, Plaintiff should be permitted to amend.

Plaintiff asserts that the allegations in his Complaint are not so insufficiently unsubstantial so as to merit dismissal under Rule 12(b)(6). As argued above the bare assertion that Defendant was the Superintendent of the Espanola Valley Schools implicates her role in Plaintiff's expulsion from EVHS. So too, the remainder of Defendant's arguments as to the insufficiency of Plaintiff's Complaint are similarly sufficient to withstand Defendant's Motion. However, even assuming *arguendo* that they are, Plaintiff should be granted leave to amend his Complaint in accordance with the authorities cited and in the interests of justice. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

**B) Defendant is not entitled to dismissal of Plaintiff's First Amendment claim as his rights were clearly established and because he never voluntarily communicated his drawings with another student.**

Even under the facts as presently alleged in the Amended Complaint Plaintiff's First Amendment Claim is not subject to dismissal at this stage of litigation. Plaintiff's drawings must be a true threat to lose the protection of the First Amendment. The first question in deciding whether a writing is a true threat is discovering whether the drawings were intentionally communicated to another. This requirement that the government show that a person intentionally communicated the alleged threatening material to another is a long established legal proposition. Defendant's attempt to misconstrue Plaintiff's complaint shows that she acknowledges this reality. If Jones did not show intentionally show or communicate the contents of his drawings to other students, his drawings are protected speech. Furthermore, cases cited by Defendant show that the law was sufficiently clear in this regard to prevent the imposition of qualified immunity in these circumstances. Therefore, because Plaintiff's Complaint does not allege intentional

communication of his drawings to another student, Defendant's Motion cannot be granted on that ground.

> **i)** **Plaintiff's rights were clearly established under Tenth Circuit law and the law of the Federal Circuits.**

The government may criminalize alleged threatening speech only when it is a "true threat." Watts v. United States, 394 U.S. 705, 708 (1969) (in interpreting statue outlawing threatening the President, the Supreme Court held that government did not prove a "true threat" when a protester stated that President Johnson would be the first person in his sights if he were drafted). The "true threat" standard requires that the accused communicate the threat in some manner. United States v. Syring, 522 F. Supp. 2d 125, 129 (D.D.C. 2007). A "true threat" is a statement "where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Id. (quoting Virginia v. Black, 538 U.S. 343, 359 (2002)). "The question is whether those who hear or read the threat reasonably consider that an actual threat has been made. It is the making of the threat, not the intention to carry it out, that violates the law." United States v. Martin, 163 F.3d 1212, 1216 (10th Cir. 1998).

> For First Amendment purposes, we define 'threat' as a declaration of intention, purpose, design, goal, or determination to inflict punishment, loss, or pain on another, or to injure another or his property by the commission of some unlawful act. It is not necessary to show that defendant intended to carry out the threat, nor is it necessary to prove he had the apparent ability to carry out the threat. The question is whether those who hear or read the threat reasonably consider that an actual threat has been made. It is the making of the threat and not the intention to carry out the threat that violates the law.

Nielander v. Bd. of County Com'rs of County of Republic, Kan., 582 F.3d 1155, 1167 (10th Cir. 2009) (citing United States v. Viefhaus, 168 F.3d 392, 395–96 (10th Cir.1999)). "Whether a statement constitutes a 'true threat' is a fact-intensive inquiry, in which the language, the context

in which the statements are made, as well as the recipients' responses are all relevant." Id. at 1167-68 (citing United States v. Magleby, 241 F.3d 1306, 1311 (10th Cir.2001); United States v. Crews, 781 F.2d 826, 832 (10th Cir.1986)). Thus, courts determining whether communications constitute true threats have required that the person intend to communicate the threat. Planned Parenthood v. American Coalition of Life Activists, 290 F.3d 1058, 1075 (9th Cir. 2002).

The Tenth Circuit, in accord with other circuits, has also found that it is critical that an accused have intended to communicate a threat. United States v. Martin, 163 F.3d 1212, 1216 (10th Cir. 1998) (citing United States v. Stevenson, 126 F.3d 662, 664 (5th Cir.1997)). These decisions sufficiently put Defendant on notice that the imposition of discipline for protected speech is violative of Plaintiff's First Amendment rights. Id.; see also Nielander v. Bd. of County Com'rs of County of Republic, Kan., 582 F.3d 1155, 1167-1169 (10th Cir. 2009) (assembling cases and analyzing whether the defendant there was entitled to qualified immunity). These cases, and those discussed below, provided Defendant with more than enough "fair notice" under clearly established prong of the qualified immunity standard so as to bar a motion to dismiss on qualified immunity grounds. See Stump v. Gates, 986 F.2d 1429, (10th Cir. 1993) (unpublished Order and Judgment) (discussing how a Fifth Circuit case that closely resembled the lawsuit there could put a Defendant on notice for qualified immunity purposes when the case relied upon is not an "aberration."). Therefore, Defendant's Motion cannot be granted on the ground that the law was not clearly established in light of Tenth Circuit precedent, generally, and Porter v. Ascension Parish Sch. Bd., 393 F.3d 608, 616-17 (5th Cir. 2004), specifically. Unlike the administrator in Porter, who "acted without the benefit of established law that was clear in its application to these facts[,]" id. at 621, Defendant had the advantage of the Porter decision and well developed Tenth Circuit case law on the issue of protected First Amendment speech and,

therefore, cannot be granted qualified immunity on the ground that Plaintiff's First Amendment rights were not clearly established.

### ii) Under clearly established law, Plaintiff's Amended Complaint sufficiently makes out a claim for the violation of his First Amendment rights.

While Defendant is correct in noting that there is no case in this Circuit that squarely addresses Plaintiff's First Amendment claims in the context of schools and students, the law of this Circuit and the Fifth Circuit, from which the Tenth was carved out, put Defendant on fair notice that punishing Plaintiff's conduct was unconstitutional. Fancher v. Barrientos, 723 F.3d 1191, 1201 (10th Cir. 2013). In the school context, Courts have adopted the reasoning of a "true threat" to determine whether schools may punish children who engage in alleged threatening speech. The Fifth Circuit confronted a lawsuit from parents of a child who was disciplined when his graphic drawings were inadvertently taken to school by his younger brother. Porter v. Ascension Parish Sch. Bd., 393 F.3d 608, 616-17 (5th Cir. 2004). The Fifth Circuit described the drawings as follows:

> [The sketching] was crudely drawn, depicting the school under a state of siege by a gasoline tanker truck, missile launcher, helicopter, and various armed persons. The sketch also contained obscenities and racial epithets directed at characters in the drawing, a disparaging remark about EAHS principal Conrad Braud, and a brick being hurled at him.

Porter v. Ascension Parish Sch. Bd., 393 F.3d 608, 611 (5th Cir. 2004).While the Fifth Circuit granted qualified immunity to the school employees for their discipline of the student, the analysis of the Court focused on the lack of any intent to communicate the drawing to anyone outside of his home. The Fifth Circuit held that the drawing was not a 'true threat." The Fifth Circuit stated that generally the First Amendment protects the speech of students in their artwork. However, the government can proscribe a true threat of violence without offending the First Amendment:

11

> to lose the protection of the First Amendment and be lawfully punished, the threat must be intentionally or knowingly *communicated* to either the object of the threat or a third person. Importantly, whether a speaker intended to communicate a potential threat is a threshold issue, and a finding of no intent to communicate obviates the need to assess whether the speech constitutes a "true threat."

Id. at 616-17. The Court then went on to find that accidental or unintentional exposure of such drawings cannot be criminalized:

> [t]hat the introduction of the drawing to EAHS was wholly accidental and unconnected with Adam's earlier display of the drawing to members of his household is undisputed. Private writings made and kept in one's home enjoy the protection of the First Amendment, as well as the Fourth. For such writings to lose their First Amendment protection, something more than their accidental and unintentional exposure to public scrutiny must take place.

Porter v. Ascension Parish Sch. Bd., 393 F.3d 608, 617-18 (5th Cir. 2004).

In contrast, the Eight Circuit held that a student could be constitutionally punished when he allowed his friend to communicate the contents of a threatening letter to the subject of the threats. Doe v. Pulaski County Special Sch. Dist., 306 F.3d 616, 624-25 (8th Cir. 2002). The Doe Court adopted the reasoning of other circuits, including the Tenth Circuit, and held that the threat must be communicated: "the speaker must have intentionally or knowingly communicated the statement in question to someone before he or she may be punished or disciplined for it." Id. The requirement is satisfied if the speaker communicates the statement to the object of the purported threat *or* to a third party. Id. (citing United States v. Crews, 781 F.2d 826, 831–32 (10th Cir.1986) (affirming conviction under 18 U.S.C. § 871 where a defendant made a statement to a third party that threatened to kill the President)); Hawaii v. Chung, 75 Haw. 398, 862 P.2d 1063, 1071–73 (1993) (recognizing that a defendant's statements to other teachers that he would kill the principal were true threats entitled to no First Amendment protection). In Doe, the Eighth Circuit found that the student intentionally communicated his threats in a letter when he allowed another student to read the letter. The student knew that there was a good possibility that the

contents of the letter would be reported to the student threatened. Id. The student disciplined had also discussed the contents of the letter with the person threatened. Id.

In contrast to Porter and Doe, the drawings in this case are protected First Amendment speech and, without intentional disclosure of them by Plaintiff, cannot be made punishable merely because Defendant found them to be "improper." Doc. 5 at ¶ 62. D.F. ex rel. Finkle v. Bd. of Educ. of Syosset Cent. Sch. Dist., 386 F. Supp. 2d 119 (E.D.N.Y. 2005) aff'd sub nom. D.F. v. Bd. of Educ. of Syosset Cent. Sch. Dist., 180 F. App'x 232 (2d Cir. 2006), which Defendant cites extensively in her Motion is not to the contrary. In fact, in that case the student went out of his way to communicate his story with both faculty and other students. Id. at 123 ("On October 3, 2003, Kaiser arrived late to class and found Plaintiff reading the story to the other students in the class. Kaiser first asked Plaintiff to sit down, but then allowed him to continue reading the story because he was preoccupied with checking attendance. The same day, while Plaintiff was at a voluntary program called "Latin at Lunch," Plaintiff asked permission to read his story to the other approximately sixteen (16) students present."). In addition to being factually distinct from this case, the court's analysis in D.F. is in no way different than that which Plaintiff contends should be applied to his claims under the law of the Tenth and Fifth circuits. See id. at 125. Plaintiff makes no allegation in the Amended Complaint that he intentionally communicated the contents of his drawings to other students as did the plaintiff in D.F.. Therefore, Defendant is not entitled to dismissal of Plaintiff's case under D.F. and her reliance on it is unavailing.

Our Supreme Court recently re-stated the breadth of First Amendment protected activity when it struck down a ban of violent videos to minors. The Supreme Court wrote that exposing

children to violence is nothing new and is an insufficient basis upon which to demonize otherwise constitutionally protected activity:

> California's argument would fare better if there were a longstanding tradition in this country of specially restricting children's access to depictions of violence, but there is none. Certainly the *books* we give children to read—or read to them when they are younger—contain no shortage of gore. Grimm's Fairy Tales, for example, are grim indeed. As her just deserts for trying to poison Snow White, the wicked queen is made to dance in red hot slippers "till she fell dead on the floor, a sad example of envy and jealousy." The Complete Brothers Grimm Fairy Tales 198 (2006 ed.). Cinderella's evil stepsisters have their eyes pecked out by doves. Id., at 95. And Hansel and Gretel (children!) kill their captor by baking her in an oven. Id., at 54.
>
> High-school reading lists are full of similar fare. Homer's Odysseus blinds Polyphemus the Cyclops by grinding out his eye with a heated stake. The Odyssey of Homer, Book IX, p. 125 (S. Butcher & A. Lang transls. 1909) ("Even so did we seize the fiery-pointed brand and whirled it round in his eye, and the blood flowed about the heated bar. And the breath of the flame singed his eyelids and brows all about, as the ball of the eye burnt away, and the roots thereof crackled in the flame"). In the Inferno, Dante and Virgil watch corrupt politicians struggle to stay submerged beneath a lake of boiling pitch, lest they be skewered by devils above the surface. Canto XXI, pp. 187–189 (A. Mandelbaum transl. Bantam Classic ed.1982). And Golding's Lord of the Flies recounts how a schoolboy called Piggy is savagely murdered *by other children* while marooned on an island. W. Golding, Lord of the Flies 208–209 (1997 ed.).

Brown v. Entm't Merchants Ass'n, 131 S. Ct. 2729, 2736-37, 180 L. Ed. 2d 708 (2011). In addressing Justice Alito's concern that the video games are truly graphic, The Supreme Court wrote:

> Justice ALITO has done considerable independent research to identify, see *post,* at 2749 – 2750, nn. 13–18, video games in which "the violence is astounding," *post,* at 2749. "Victims are dismembered, decapitated, disemboweled, set on fire, and chopped into little pieces.... Blood gushes, splatters, and pools." *Ibid.* Justice ALITO recounts all these disgusting video games in order to disgust us—but disgust is not a valid basis for restricting expression. And the same is true of Justice ALITO's description, *post,* at 2749 – 2750, of those video games he has discovered that have a racial or ethnic motive for their violence—"'ethnic cleansing' [of] ... African Americans, Latinos, or Jews." To what end does he relate this? Does it somehow increase the "aggressiveness" that California wishes to suppress? Who knows? But it does arouse the reader's ire, and the reader's desire to put an end to this horrible message. Thus, ironically, Justice ALITO's

14

argument highlights the precise danger posed by the California Act: that the *ideas* expressed by speech—whether it be violence, or gore, or racism—and not its objective effects, may be the real reason for governmental proscription.

Brown v. Entm't Merchants Ass'n, 131 S. Ct. 2729, 2738, 180 L. Ed. 2d 708 (2011).

At the pleadings stage, the absence of any allegation that Plaintiff showed his drawings to anyone voluntarily permits Plaintiff's First Amendment claim to proceed. The drawings receive the protection of the First Amendment unless they constitute a "true threat," regardless of any discomfort that Defendant may have associated with their content, Defendant's classification of Plaintiff's drawings as "disturbing" in her Motion notwithstanding.

**C) The Amended Complaint sufficiently alleges a violation of Plaintiff's right to due process so as to survive Defendant's Motion because it sufficiently alleges that Plaintiff was denied access to an education arbitrarily or because he exercised his First Amendment rights.**

Plaintiff alleges that he was denied a right to education, a property interest, for an arbitrary reason. Goss v. Lopez, 419 U.S. 564, 574 (1975) ("[T]he State is constrained to recognize a student's legitimate entitlement to a public education as a property right which is protected by the Due Process Clause.")). In the context of a public education,

> "[t]he Due Process Clause not only provides a procedural safeguard against deprivations of life, liberty, and property but also protects substantive aspects of those interests from unconstitutional restrictions by government." Harris v. Blake, 798 F.2d 419, 424 (10th Cir.1986). Absent certain factors not present here, we will uphold a school's decision to suspend a student in the face of a substantive due process challenge if the decision is not arbitrary, lacking a rational basis, or shocking to the conscience of federal judges.

Butler v. Rio Rancho Pub. Sch. Bd. of Educ., 341 F.3d 1197, 1200-01 (10th Cir. 2003) (citations omitted). A decision is "irrational" when it is "not in accordance with reason and utterly illogical." "Irrational." Dictionary.com. Collins English Dictionary - Complete & Unabridged 10th Edition. HarperCollins Publishers. http://dictionary.reference.com/browse/irrational (accessed: August 08, 2012). A decision is "arbitrary" where it is "not based on reason or

15

evidence; done without concern for what is fair or right; depending on individual discretion (as of a judge) and not fixed by law[.]" "Arbitrary." Merriam-Webster.com. Merriam-Webster, <http://www.merriam-webster.com/dictionary/arbitrary> (accessed: August 25, 2014).

Plaintiff avers in his Amended Complaint that Defendant expelled him from school for private expression of his First Amendment rights and that this activity was recommended treatment from a licensed therapist. Jones actually was evaluated by mental health professionals. Doc. 5 at ¶¶ 36-39. Plaintiff alleges that the Defendant's decision to deny him a public education was arbitrary. Based on Plaintiff's complaint, he brought drawings to school; the drawings were in his backpack; the drawings were removed from his backpack by law enforcement when he was in an administrator's office; Plaintiff received a mental health evaluation; Plaintiff was given a clean bill of health; and Plaintiff was seeing a therapist for his PTSD. The denial of public education to a young man who did not disrupt school in any manner was irrational or arbitrary because any reasonable person in Defendant's position would not have expelled a student in Plaintiff's position from school.

In Butler v. Rio Rancho Pub. Sch. Bd. of Educ., 341 F.3d 1197, 1201 (10th Cir. 2003), the Tenth Circuit found that a year-long suspension of a child who drove a vehicle containing a knife, handgun, ammunition and drug paraphernalia did not violate due process. In so finding the Court reasoned:

> Contrary to the Butlers' allegations and the district court's decision, the School in this case did not suspend Mr. Butler for "unknowingly" bringing a knife onto school property. Although the hearing officer initially found only that Mr. Butler possessed weapons on school property in violation of school policy, the school board later concluded "[Mr.] Butler should have known, as the driver of the vehicle, that he was in possession of and transporting a weapon onto school grounds." This was because "the knife was in plain view and readily identifiable as a knife to persons standing outside the vehicle looking in." The board also concluded "[Mr.] Butler knew, or should have known that he was responsible for the vehicle he brought onto school property and the contents thereof."

> …
> There is no doubt the School has a legitimate interest in providing a safe environment for students and staff. It is not unreasonable for the School to conclude that student possession of weapons on school property threatens this interest. In order to protect against this threat and further the School's interest in safety, we believe there is a rational basis for the School to suspend Mr. Butler, even for one year, when he should have known he brought a weapon onto school property. The School's decision was not arbitrary, nor does it shock the conscience. Accordingly, the decision did not violate Mr. Butler's substantive due process rights, if any.

Butler v. Rio Rancho Pub. Sch. Bd. of Educ., 341 F.3d 1197, 1201 (10th Cir. 2003). Butler informs this case for two reasons. The first is because the interest there – in providing a safe environment for students – is the same alleged by the Defendant in this case. Doc. 45 at p. 10. However, the second reason that Butler is informative here is because of the disparity of the facts of that case and this one.

As described, the Tenth Circuit held against the student in Butler because he engaged in conduct that was not constitutionally protected, that is, possessing weapons and drug paraphernalia on campus. Id. at 1201. The Tenth Circuit found this conduct to be sufficiently unprotected so as to merit dismissal at the pleadings stage even though the student there was suspended for a year. Id. In this case, however, the conduct that was punished - by outright expulsion - was protected by the First Amendment and posed no "true threat" to any student or teacher, as did the possession of weapons by the student in Butler. Therefore, the fact that the student in Butler was merely suspended, while Plaintiff was expelled, for highly distinct conduct is at a minimum sufficient to prevent dismissal of Plaintiff's Amended Complaint under Rule 12(b)(6). Brokers' Choice of Am., Inc. v. NBC Universal, Inc., --- F.3d ----, 2014 WL 3307834, *4 (10th Cir. 2014).

To the extent that Plaintiff's Complaint insufficiently alleges that Defendant's decision was arbitrary rather than conscious-shocking, Doc. 45 at 10, Plaintiff should be permitted to amend his Complaint in the interest of justice. Fed. R. Civ. P. 15(a).

**D) Equal Protection**

Plaintiff does not oppose dismissal of his equal protection claim.

### III. CONCLUSION

Wherefore, Plaintiff requests that the Court deny Defendant's Motion to Dismiss; or, if the Court should for any reason feel inclined to grant Defendant's Motion, grant Plaintiff leave to amend his Complaint.

Respectfully Submitted,

**KENNEDY KENNEDY & IVES, LLC**

*/s/ Joseph P. Kennedy*
Joseph P. Kennedy
Shannon L. Kennedy
Laura S. Ives
Theresa V. Hacsi
Attorneys for Plaintiff
1000 Second Street NW
Albuquerque, New Mexico 87102
(505) 244-1400 Fax (505) 244-1406

I hereby certify that I served the above pleading on all parties by electronically filing it with the CM/ECF system this 25th day of August, 2014.

*/s/ Joseph P. Kennedy*
Joseph P. Kennedy