IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BILLY JONES,

      Plaintiff,

vs.                                                                     No. 1:13-cv-00741 RB/WPL

ESPANOLA MUNICIPAL SCHOOL
DISTRICT, JANETTE ARCHULETA and
MARTHA FERNANDEZ,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff was arrested after police and school officials suspected he planned to harm fellow high school students. Plaintiff sued the school district, the school superintendent, and Defendant Martha Fernandez, a juvenile probation officer, under 42 U.S.C. § 1983. Jurisdiction arises under 28 U.S.C. § 1331. Defendant Fernandez filed a Motion for Summary Judgment on Grounds of Absolute Immunity or Qualified Immunity. (Doc. 30.) Having reviewed the submissions and arguments of the parties, the Court **GRANTS** this motion.

I.    **Background**

On September 7, 2010, Plaintiff was a fifteen-year-old high school student at Espanola Valley High School in Espanola, New Mexico. School officials found notes and drawings in Plaintiffs backpack that "contained images of tombstones with students' names and other negative imagery." (Doc. 5 ¶ 34.) Plaintiff told school officials that the materials were "art for a storyboard and that it was also a list of children who bugged him." (Doc. 5 ¶ 35.) Plaintiff was transported to the hospital for a psychiatric evaluation. (Doc. 5 ¶ 37.) After Plaintiff was found to present no danger, he was released to the custody of his mother. (Doc. 5 ¶¶ 38-39.)

On September 8, 2010, Espanola Police Officer Christian Lopez prepared a criminal complaint and statement of probable cause that Plaintiff should be charged with aggravated assault and attempted murder. Defendant Fernandez authorized detention. On September 9, 2010, Espanola police arrested Plaintiff at his psychologist's office. On September 10, 2010, Defendant Fernandez attempted to conduct a preliminary inquiry, but Plaintiff and his family chose not to provide any information. Following the preliminary inquiry, Defendant Fernandez recommended that Plaintiff remain in detention and that the children's court attorneys file a delinquency petition. On October 25, 2010, a children's court attorney found insufficient evidence to prosecute the charges.

On October 30, 2013, Plaintiff filed an Amended Complaint seeking recovery under 42 U.S.C. § 1983 against the Espanola Municipal School District and Superintendent Janette Archuleta (collectively "School Defendants"), as well as Defendant Fernandez. (Doc. 5). In the Amended Complaint, Plaintiff alleges (1) unlawful arrest in violation of the Americans with Disabilities Act and the First, Fourth, and Fourteenth Amendments against Defendant Fernandez; (2) retaliation in violation of the First Amendment against the School Defendants; (3) denial of equal protection in violation of the Fourteenth Amendment against all Defendants; (4) denial of due process in violation of the Fourteenth Amendment against the School Defendants; and (5) violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 against the Espanola Municipal School District. (*Id*.) Plaintiff alleges that Defendant Fernandez acted under color of state law in her individual capacity at all relevant times. (*Id*.)

Defendant Fernandez moves for summary judgment based on (1) absolute or quasi-prosecutorial immunity and (2) qualified immunity. (Doc. 30.) Plaintiff opposes this motion. (Doc. 36.) Defendant Fernandez filed a reply brief in support of her motion. (Doc. 39.)

## II. Standard

Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could influence the determination of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a reasonable trier of fact "could return a verdict for the nonmoving party." *Id*. At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518. 559-60 (2006). If there is a genuine dispute of material fact, then the "facts must be viewed in the light most favorable to the nonmoving party[.]" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

Additional considerations arise when analyzing a motion for summary judgment based on qualified immunity. The Court "still views the facts in the light most favorable to the non-moving party and resolves all factual disputes and reasonable inferences in his favor." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). "Unlike most affirmative defenses, however, the plaintiff would bear the ultimate burden of persuasion at trial to overcome qualified immunity by showing a violation of clearly established federal law." *Id.* "Thus, at summary judgment, the Court must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Id*.

## III. Statement of Facts

On September 7, 2010, Espanola Police Lieutenant Christian Lopez responded to a call from School Resource Officer Danny Pacheco at Espanola Valley High School. (Plaintiff's

3

Exhibit C.) School Resource Officer Pacheco informed Lieutenant Lopez that a student had a "hit list" with the names of at least thirteen students. (*Id.*) School officials were concerned that the student with the "hit list" planned to injure or kill students on the list. (*Id.*)

Lieutenant Lopez met with School Resource Officer Pacheco, Assistant Principal DeVanna Ortega, School Psychologist Lloyd Vigil, School Security Officer Chris Archuleta, Plaintiff, and Plaintiff's mother, Celia Jones Abeyta. (Affidavit of Christian Lopez, Defendant's Exhibit A, Doc. 30-1; Affidavit of Danny Pacheco, Defendant's Exhibit B, Doc. 30-1; Affidavit of DeVanna Ortega, Defendant's Exhibit C, Doc. 30-2; Affidavit of Lloyd Vigil, Defendant's Exhibit D, Doc. 30-2; Affidavit of Celia Jones Abeyta, Plaintiff's Exhibit A, Doc. 36-1; and Espanola Police Department Report, Plaintiff's Exhibit C, Doc. 36-3.) Defendant Fernandez was not present at the meeting. At the meeting, the participants discussed materials that had been found in Plaintiff's backpack. (Defendant's Exhibit A, Exhibit B, and Exhibit C.) Plaintiff admitted to Lieutenant Lopez that he wrote and drew the materials. (*Id.*)

The materials contained three lists. (Defendant Exhibit A-1.) One of the lists was titled "List for Hell." (*Id.*) The "List for Hell" contained six entries: "1. Pink Whore, 2. Special Blonde, 3. Fat Ass, 3 [sic]. Chris D, 4. Chriss; 5. Austin." (*Id.*) Another list contained the following: "1. Andria, 2. Krystal, 3. Alex, 4. Mario, 5. Dustin, 6. Roberto, 7. Rosa, 8. Alexandria, 9. Chris, 10. 1 girl, 11. 1 boy, 12. 2 girl, and 13. Chris D. Trujillo." (*Id.*) The third list was entitled "List No #5" and read as follows: "1. Nathan, 2. Austin, 3. Dustin, 4. Rosa, 5. Megan, 6. Jaymes, 7. Kayla." (*Id.*)

The materials contained eight drawings. (Defendant Exhibit A-1.) The first drawing depicted four tombstones, which read: "RIP - Jolene Benson - Pink Whore; RIP - Ismaiel [sic] - Fat Ass; RIP Austin C; RIP Chris D. Trujillo - Mexican Hitler." (*Id.*) The first drawing also

4

contained the words "Rest in Peace" and "to HELL." (*Id.*) A second drawing showed a "shack of blood" and the question "will you survive?" (*Id.*) A third drawing depicted a man wearing a shirt emblazoned with the words "unleash hell" beheading a person. (*Id.*) A fourth drawing showed a chemistry lab and the man wearing the "unleash hell" shirt spattered in blood. (*Id.*) A fifth drawing shows a torture chamber, two people in restraints (one with the name "Angel" on her shirt), a stabbed person on the floor, and two severed heads on a "Head Shelf." (*Id.*) A sixth drawing depicted the man wearing the "unleash hell" shirt smiling after setting a person on fire. (*Id.*) A seventh drawing showed the man wearing the "unleash hell" shirt beating an object hanging from a tree. (*Id.*) The final drawing shows a girl tied to a table with blood pouring from her chest. (*Id.*) Assistant Principal Ortega confirmed that some of the names on the lists and tombstones were students at Espanola Valley High School. (Defendant Exhibit A and Exhibit C.)

Lieutenant Lopez asked Plaintiff about the materials. (Defendant Exhibits A.) Plaintiff admitted that he drafted the materials and explained that the lists contained names of other students who "bugged him." (Defendant Exhibits A, B, and C.) Plaintiff stated the pictures were of scenes from a movie he wanted to make. (*Id.*) Ms. Abeyta confirmed that Plaintiff had been working on drawing storyboards for a horror movie. (Plaintiff Exhibit A.) Ms. Abeyta also explained that Plaintiff's therapist recommended that Plaintiff draw as a way to relieve stress from being bullied at school. (Plaintiff Exhibit A.) Ms. Abeyta informed Lieutenant Lopez that the students named in the lists had "mentally tortured" Plaintiff "with verbal and physical threats." (*Id.*)

According to Lieutenant Lopez, School Resource Officer Pacheco, and the school officials present at the meeting, Ms. Abeyta said that Plaintiff had violent tendencies and Plaintiff had physically assaulted her two weeks prior when she told him to take a bath and get

5

ready for school. (Defendant Exhibits A, C, and D.) Lieutenant Lopez and school officials recall that Ms. Abeyta showed them bruises on her upper arms from the assault. (*Id.*) Ms. Abeyta denies that Plaintiff was violent with her. (Plaintiff Exhibit A.)

Lieutenant Lopez asked Plaintiff if he was going to hurt or injure himself and Plaintiff replied, "I don't think so" but that sometimes he did not know what he was thinking. (Defendant Exhibits A, B, C, and D.) Lieutenant Lopez again asked Plaintiff if he would hurt himself and Plaintiff stated, "I don't know, sometimes I think that's the only way out." (Defendant Exhibits A, B, C, and D.) Plaintiff maintains that it was Lloyd Vigil who asked whether he would hurt himself. (Plaintiff Exhibit B.)

At one point during the meeting, Lloyd Vigil stepped out of the office to speak with Defendant Lopez. (Defendant Exhibit D.) When he went back into the room, Mr. Vigil saw Plaintiff's mother with her head in Plaintiff's lap. (*Id.*) Mr. Vigil asked Ms. Abeyta if she would allow Plaintiff to be mentally evaluated. (Defendant Exhibit A-5.) Ms. Abeyta turned to Plaintiff and asked him: "Do you want to leave Mommy?" (*Id.*) In response, Plaintiff started to rub Ms. Abeyta's arm and told her "No, I don't want to leave you Mommy." (*Id.*) Mr. Vigil shared this information with Lieutenant Lopez and it was included in the statement of probable cause. (Defendant Exhibit A-5.)

During the meeting, school officials showed Lieutenant Lopez a handwritten note from a student and an e-mail from a teacher about Plaintiff. (Defendant Exhibits A and C.) In the note, dated March 2, 2010, a student named Samantha Madrid reported that Plaintiff told her that she was on his "hit list," Plaintiff was going to bring a knife or gun to school and kill her, and she was afraid to come to school. (Defendant Exhibit A-3.) Ms. Abeyta and Plaintiff point out that the note was dated six months prior to the meeting. (Plaintiff Exhibits A and B.) In the e-mail,

6

dated September 7, 2010, a teacher named Josefina Litera stated that she saw Plaintiff's hands shaking during class and Plaintiff said his hands were shaking because he had missed breakfast. (Defendant Exhibit A-4.) Ms. Abeyta explained that Plaintiff frequently missed breakfast because students bullied him in the cafeteria. (Plaintiff Exhibits A.) The teacher's e-mail further stated that another student reported that Plaintiff was rolling his eyes and making a list and her name was on the list, and two girls said they were afraid of Plaintiff. (Defendant Exhibit A-4.) Ms. Abeyta and Plaintiff deny Plaintiff threatened anyone. (Plaintiff Exhibits A and B.)

After the meeting, Plaintiff was transported by ambulance from the high school to St. Vincent's Hospital for a psychiatric evaluation due to his possible homicidal and suicidal tendencies. (Defendant Exhibits A and C, Plaintiff Exhibits A and B.) Plaintiff was evaluated by a psychologist who determined that Plaintiff was not a threat to himself or others. (Plaintiff Exhibits A and B.) That evening, Plaintiff was discharged to his mother's custody, but Ms. Abeyta did not answer her phone. (Plaintiff Exhibit B.) Plaintiff called his girlfriend and asked for a ride home but she refused. (*Id.*) Plaintiff spent the night at the hospital. (*Id.*) Plaintiff's mother and uncle picked him up from the hospital on the morning of September 8, 2010. (*Id.*)

Plaintiff did not attend school on September 8, 2010. (Plaintiff Exhibits A and B.) However, School Resource Officer Pacheco informed Lieutenant Lopez that Plaintiff had escaped from the hospital and his whereabouts were unknown. (Defendant Exhibit A-5.) Lieutenant Lopez learned that Plaintiff called his girlfriend and requested a ride home. (*Id.*) Plaintiff's girlfriend reported to Lieutenant Lopez that Plaintiff sounded "distant" when she talked with him. (*Id.*) Lieutenant Lopez learned that Ms. Abeyta had picked up Plaintiff on September 8, 2010, and had Plaintiff with her at 10:00 a.m. on that day. (*Id.*)

The staff at Espanola Valley High School feared that Plaintiff would return to the school to act out what he had written and drawn. (Defendant Exhibits A-5 and C.) Based on the foregoing facts, Lieutenant Lopez believed he had probable cause to arrest Plaintiff.[1] (*Id.*) On September 8, 2010, Lieutenant Lopez prepared a statement of probable cause recounting the above facts, and requesting that Plaintiff be charged with attempted murder and aggravated assault. (Defendant Exhibits A-5 and C.)

On September 8, 2010, the Espanola Police Department informed Defendant Fernandez that it planned to charge Plaintiff with attempted murder and aggravated assault. (Affidavit of Martha Fernandez, Defendant Exhibit E, Doc. 30-2). Defendant Fernandez called the Children Youth & Families Department's Statewide Central Intake with the information provided by the Espanola Police Department for the purpose of generating a risk assessment score for Plaintiff. (*Id.*) Statewide Central Intake advised Defendant Fernandez that Plaintiff met the requirements for secure detention. (*Id.*) Defendant Fernandez called the Espanola Police Department with the response that Plaintiff should be detained. (*Id.*) Espanola Police arrested Plaintiff on September 9, 2010 at his psychologist's office in Espanola. (*Id.*)

On September 10, 2010, Defendant Fernandez conducted a preliminary inquiry with Plaintiff and his family. (Defendant Exhibit E.) Plaintiff and his family informed Defendant Fernandez that they wanted to "plead the Fifth" and provided Defendant Fernandez with no useful information. (*Id.*) In her preliminary inquiry determination, Defendant Fernandez stated that Plaintiff's "family chose not to provide any information for a social determination as they invoked their Fifth Amendment rights. Mom stated it was all a misunderstanding. Father lives [in] Georgia and both parents as well as extended family seem to be support [sic] of child."

---

[1] Plaintiff sued Lieutenant Lopez and the City of Espanola in an earlier lawsuit based on the same operative facts. *See Jones v. Pacheco, et al.,* No. 1:12-cv-00565 KG/SMV. This Court expresses no opinion about Plaintiff's claims in the other lawsuit.

(Defendant Exhibit E.) Defendant Fernandez recommended that Plaintiff "remain in detention as he allegedly was a danger to himself, a danger to the community and a possible flight risk." (*Id.*)

Defendant Fernandez based her determination regarding detention on the information provided by the Espanola Police Department and the response from the Statewide Central Intake that Plaintiff met the criteria for detention. (*Id.*) Following the preliminary inquiry, Defendant Fernandez determined that that it was in the best interests of Plaintiff and the public that a delinquency petition be filed by the children's court attorneys because the case involved a felony. (*Id.*) As a result, Defendant Fernandez recommended that the children's court attorneys file a delinquency petition based on the charges. (*Id.*) On October 25, 2010, a children's court attorney found insufficient evidence to prosecute the charges. (*Id.*)

In the Amended Complaint, Plaintiff alleges that Defendant Fernandez is liable for damages under 42 U.S.C. § 1983 for (1) unlawful arrest in violation of the Americans with Disabilities Act and the First, Fourth, and Fourteenth Amendments; and, (2) denial of Equal Protection in violation of the Fourteenth Amendment. (Doc. 5.) In her motion for summary judgment, Defendant Fernandez asserts that she is entitled to absolute or quasi-prosecutorial immunity, or alternatively, qualified immunity. (Doc. 30.)

## IV. Discussion

### A. Defendant Fernandez is not entitled to absolute or quasi-prosecutorial immunity

Defendant Fernandez contends that she is entitled to absolute immunity because she functioned in a quasi-prosecutorial capacity. Absolute immunity protects certain government officials from a suit for damages under 42 U.S.C. § 1983. *Mink v. Suthers*, 482 F.3d 1244, 1258 (10th Cir. 2007). A defendant who seeks exemption from personal liability on the basis of

absolute immunity bears "the burden of showing that such an exemption is justified by overriding considerations of public policy." *Forrester v. White*, 484 U.S. 219, 224 (1988).

A prosecutor is absolutely immune for activities which are "intimately associated with the judicial process" such as initiating and pursuing a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). However, absolute prosecutorial immunity is not available for "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Id.*, 424 U.S. at 430-31. In certain circumstances, quasi-prosecutorial immunity is available to other types of government officials "who perform functions closely associated with the judicial process." *Cleavinger v. Saxner,* 474 U.S. 193, 200 (1985); *see also Butz v. Economou*, 438 U.S. 478, 515 (1978) ("We also believe that agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts."). However, the limitations applicable to prosecutors apply to such officials, *i.e.*, prosecutorial immunity is potentially available only to officials engaged in initiating or pursuing a criminal prosecution as opposed to administrative or investigatory activities.

In order to determine whether particular acts of government officials are eligible for quasi-prosecutorial immunity, the Tenth Circuit applies a 'functional approach . . . which looks to the nature of the function performed, not the identity of the actor who performed it.'" *Malik v. Arapahoe Cnty. Dep't of Soc. Servs.*, 191 F.3d 1306, 1314 (10th Cir. 1999) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). "The more distant a function is from the judicial process, the less likely absolute immunity will attach." *Snell v. Tunnell*, 920 F.2d 673, 687 (10th Cir. 1990). The Tenth Circuit looks "to the particular task a defendant was performing and its

nexus to the judicial process rather than deciding that social workers or guardians ad litem as a class are entitled to absolute immunity." *Id*.

For instance, in *Snell,* the Tenth Circuit held that the crucial distinction for determining whether a social worker was entitled to absolute immunity was whether the social worker was acting in a way functionally analogous to a prosecutor or in an investigative capacity. *Id.* at 689. Because the social workers in that case sought a custody order as part of their investigation into child abuse and before any petition was filed to adjudicate the status of the child, the social workers were acting in an investigative capacity. *Snell*, 920 F.2d at 690. In concluding the social workers could claim only qualified immunity, the Tenth Circuit held that "[a] social worker seeking a pre-petition order for protective custody functions like a police officer seeking an arrest warrant; a functional approach to immunity requires that those performing like functions receive like immunity." *Id.*

As a New Mexico juvenile probation officer, Defendant Fernandez operates pursuant to the provisions of the New Mexico Children's Code. *See* N.M. Stat. Ann. § 32A-2-5(A). The New Mexico Children's Code provides that "[a] juvenile probation . . . officer does not have the powers of a law enforcement officer." N.M. Stat. Ann. § 32A-2-5(C). Consequently, a juvenile probation officer does not have the authority to detain a child unless the child is already under supervision as a delinquent child.[2] *Id*. With respect to criminal complaints against a juvenile, the statute provides: "Complaints alleging delinquency shall be referred to probation services, which shall conduct a preliminary inquiry to determine the best interests of the child and the public." N.M. Stat. Ann. § 32A-2-7(A). "Probation services shall notify the children's court attorney of the receipt of any complaint involving an act that constitutes a felony under the applicable criminal law." N.M. Stat. Ann. § 32A-2-7(F). "A petition alleging delinquency shall not be filed

---
[2]Nothing suggests that Plaintiff was under supervision as a delinquent child.

in delinquency proceedings unless the children's court attorney, after consulting with probation services, has determined and endorsed upon the petition that the filing of the petition is in the best interest of the public and the child." N.M. Stat. Ann. § 32A-2-6.

Under the New Mexico statutory scheme, the juvenile probation officer does not have authority to bring criminal charges against a child. Rather the juvenile probation officer must notify the children's court attorney of any felony charges brought by law enforcement officers. The children's court attorney has the sole discretion to file a delinquency petition. Thus, the juvenile probation officer does not act in a manner functionally analogous to a prosecutor.

The record demonstrates that Defendant Fernandez acted in accordance with the New Mexico statutory scheme. Upon receiving the information from the Espanola Police Department, Defendant Fernandez contacted Statewide Central Intake and relayed the response to the Espanola Police Department. Defendant Fernandez did not arrest Plaintiff. Indeed, she lacked authority to do so. An Espanola Police Department officer arrested Plaintiff. After the Espanola Police arrested Plaintiff, Defendant Fernandez conducted a preliminary inquiry with Plaintiff and his family. Plaintiff and his family informed Defendant Fernandez that they wanted to "plead the Fifth" and provided Defendant Fernandez with no useful information. Based on the information available to her, Defendant Fernandez recommended that Plaintiff remain in detention and that the children's court attorneys file a delinquency petition. Clearly, Defendant Fernandez did not function in a manner analogous to a prosecutor. Rather, Defendant Fernandez acted in an administrative or investigative capacity at all times. As Defendant Fernandez has not shown that she operated in a manner analogous to a prosecutor, Defendant Fernandez has not met her burden to show that she is entitled to quasi-prosecutorial immunity.

**B.	Defendant Fernandez is entitled to qualified immunity**

Defendant Fernandez has asserted the defense of qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (*quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Once a defendant asserts qualified immunity, the plaintiff bears the burden of satisfying a "'strict two-part test.'" *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (*quoting Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009)). This two-part test requires "the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Courtney v. Oklahoma ex rel., Dep't of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013). The district court maintains the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* (quoting *Pearson v. Callahan*, 555 U.S. at 236). "If the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity." *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995).

A right is clearly established in this circuit "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196-97 (10th Cir. 2010) (internal quotation marks omitted). A previous decision need not be "materially factually similar or identical to the present case; instead, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 1197 (internal quotations marks and alterations omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be

clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

In a qualified immunity context, the plaintiff has the burden of asserting facts which allege a constitutional claim. In this case, Plaintiff asserts that Defendant Fernandez failed to "verify whether [Plaintiff] was a fugitive at large, or a mentally disabled teenage boy who had been released from the hospital to be treated at a later date" and Plaintiff "was charged with attempted murder upon the explicit approval and recommendation of Defendant Fernandez in violation of the Americans with Disabilities Act and in violation of his First, Fourth and Fourteenth Amendment rights." (Doc. 5, ¶¶ 51-52.) Plaintiff alleges the arrest was "objectively unreasonable as he had committed no crime in drawing pictures to reduce the stress of being bullied at school." (Doc. 5 at ¶ 53.) Plaintiff alleges that Fernandez "lacked probable cause to arrest for attempted murder and, therefore, criminalized his disability by facilitating his arrest and the groundless charge of attempted murder." (Doc. 5 at ¶ 55.) Plaintiff additionally alleges that Defendant Fernandez violated his right to equal protection by treating him differently based on his disability. (Doc. 5 at ¶ 55.)

Plaintiff has not asserted facts that would support a Fourth Amendment claim against Defendant Fernandez. The record establishes that Defendant Fernandez did not arrest Plaintiff or participate in the probable cause determination. The undisputed facts demonstrate that Lieutenant Lopez gathered the facts and prepared the statement of probable cause. Defendant Fernandez did not attend the meeting at the school, did not view Plaintiff's notes and drawings, and had no involvement in the investigation that prompted Lieutenant Lopez to prepare the statement of probable cause. On September 8, 2010, the Espanola Police Department informed Defendant Fernandez that it planned to charge Plaintiff with attempted murder and aggravated assault.

Defendant Fernandez called the Statewide Central Intake with the information provided by the Espanola Police Department for the purpose of generating a risk assessment score for Plaintiff. The Statewide Central Intake advised Defendant Fernandez that Plaintiff met the score for secure detention. Defendant Fernandez called the Espanola Police Department with the response that Plaintiff should be detained. After Plaintiff was arrested, Defendant Fernandez attempted to conduct a preliminary inquiry with Plaintiff and his family. Plaintiff's family chose not to provide any information. As a result, Defendant Fernandez recommended continued detention. Because the case involved felony charges, Defendant Fernandez recommended that the children's court attorneys file a delinquency petition. Plaintiff cites to no case law that would establish a constitutional claim against Defendant Fernandez under these facts. Upon Defendant Fernandez's assertion of qualified immunity, Plaintiff was required to come forward with facts to establish a violation of a clearly established constitutional right. Plaintiff failed to carry his burden to show that Defendant Fernandez violated a clearly established constitutional right with respect to a Fourth Amendment claim.

Additionally, Plaintiff has not asserted facts that would support a First Amendment claim against Defendant Fernandez. In his response brief, Plaintiff generally argues that Defendant Fernandez violated his First Amendment rights because the statement of probable cause was based in part on his notes and drawings. General propositions of law are insufficient to show a clearly established right. *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2084 (2011). The right allegedly violated must be established, "'not as a broad general proposition,'" *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam), but in a "particularized" sense so that the "contours" of the right are clear to a reasonable official, *Anderson v. Creighton*, 483 U.S. 635 (1987). Upon Defendant Fernandez's assertion of qualified immunity, Plaintiff was required to come forward

with facts to establish a violation of a clearly established constitutional right. Plaintiff has neither alleged nor established that the actions of Defendant Fernandez violated a clearly established right with respect to a First Amendment claim.

Moreover, a First Amendment claim against Defendant Fernandez is precluded by the reasoning set forth in *Reichle v. Howards*, 132 S.Ct. 2088 (2012). In *Reichle*, plaintiff alleged that Secret Service agents violated his First Amendment rights by retaliating against him for engaging in constitutionally protected speech. *Id.* at 2089. The United States Supreme Court held that a First Amendment right to be free from retaliatory arrest for speech, even if the arrest was otherwise supported by probable cause, was not clearly established at time of plaintiff's arrest in 2006. *Id.* The Supreme Court stated: "This Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause." *Reichle*, at 2093 (citation omitted). The fact that *Reichle* was decided in 2012 indicates that as of September 2010 the Supreme Court had not recognized such a right. Plaintiff has submitted no authority for the notion that Defendant Fernandez was authorized to conduct an independent probable cause determination. Under the New Mexico Children's Code, Defendant Fernandez properly relied on the statement of probable cause submitted to her by the Espanola Police Department. *See* N.M. Stat. Ann. § 32A-2-5(C) (Defendant Fernandez was not a law enforcement officer). After Defendant Fernandez asserted qualified immunity, Plaintiff was required to come forward with facts to establish a violation of a clearly established constitutional right. Plaintiff has not satisfied his burden with respect to a First Amendment claim against Defendant Fernandez.

Plaintiff's equal protection claim fares no better. "The first element of an equal protection claim is that the plaintiff was 'intentionally treated differently from others similarly situated.'" *SECSYS, LLC v. Vigil,* 666 F.3d 678, 688 (10th Cir. 2012) (quoting *Village of Willowbrook v.*

16

*Olech*, 528 U.S. 562, 564 (2000) (per curiam)). In order to establish an equal protection claim "a plaintiff must first establish that others, 'similarly situated in every material respect' were treated differently." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (quoting *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1210 (10th Cir. 2006)). Upon Defendant Fernandez's assertion of qualified immunity, Plaintiff was required to come forward with facts to establish a violation of a clearly established constitutional right. As Plaintiff has failed to allege any facts that would satisfy the primary element of an equal protection claim, he has to meet his burden to overcome the assertion of qualified immunity.

Finally, Plaintiff has not asserted facts that would support an Americans with Disabilities Act claim against Defendant Fernandez. The ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. The ADA defines the term "qualified individual with a disability," as "an individual with a disability who, with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). "The term disability means a physical or mental impairment that substantially limits one or more of the major life activities of the individual." 42 U.S.C. § 12102(2)(A).

"The first element of a discrimination claim under the ADA is proof that the plaintiff has a qualifying 'disability' under the statute." *Kellogg v. Energy Safety Servs. Inc.*, 544 F.3d 1121, 1124 (10th Cir. 2008). Merely having an impairment does not make one disabled for purposes of the ADA. *See Steele v. Thiokol Corp.*, 241 F.3d 1248, 1252 (10th Cir. 2001) ("the ADA demands that we examine exactly how [plaintiff's] major life activities are limited by his impairment.").

Rather, to constitute a disability, the impairment must substantially limit one or more of the individual's major life activities. *Id.* In this case, Plaintiff has produced no evidence that his psychological issues or post-traumatic stress disorder limit one or more of his major life activities. Because Plaintiff has not shown that he is substantially limited in any of his major life activities, Plaintiff has failed to substantiate an ADA claim against Defendant Fernandez.

Qualified immunity "shields government officials performing discretionary functions from liability if their conduct does not violate clearly established rights of which a reasonable government official would have known." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (quotation omitted). Once a qualified immunity defense has been asserted, the plaintiff has "the burden of showing both that a constitutional violation occurred and that the constitutional right was clearly established at the time of the alleged violation." *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008). As previously discussed, Plaintiff has produced no evidence that Defendant Fernandez committed a violation of clearly established federal constitutional or statutory law. In that Plaintiff has failed to meet his burden to overcome the assertion of qualified immunity, Defendant Fernandez is entitled to qualified immunity.

## V. Conclusion

Defendant Fernandez is not entitled to absolute quasi-prosecutorial immunity because she did not establish that she acted in a manner functionally analogous to a prosecutor. Defendant Fernandez is entitled to qualified immunity because Plaintiff did not establish that Defendant Fernandez violated any clearly established right of which a reasonable juvenile probation officer would have known.

**THEREFORE,**

**IT IS ORDERED** that Defendant Martha Fernandez's Motion for Summary Judgment (Doc. 30) is **GRANTED.**

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**