IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BILLY JONES,

     **Plaintiff,**

vs.                                  **No. 13 -00741 RB-WPL**

ESPANOLA MUNICIPAL SCHOOL DISTRICT,
and SUPERINTENDENT JANETTE ARCHULETA

     **Defendants.**

## MOTION FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY BY DEFENDANT JANETTE ARCHULETA

COMES NOW Defendant Janette Archuleta (Archuleta), by and through her undersigned counsel of record, Narvaez Law Firm, P.A. (Henry F. Narvaez and Carlos E. Sedillo), and pursuant to Fed. R. Civ. P. 56(e), for her Motion for Summary Judgment on Qualified Immunity, states as follows.  Plaintiff opposes this Motion for Summary Judgment.

## I.    INTRODUCTION

Janette Archuleta is a former Superintendent of the Espanola Municipal School District. Billy Jones was a student at the Espanola High School.  The claims in the Second Amended Complaint against the School District and Defendant Archuleta center on Mr. Jones' expulsion from school because of  tombstone drawings, "other negative imagery" and a "list of hell" depicting the names of fellow classmates. See Second Amended Complaint.  The causes of action plead against Defendant Archuleta are: First Amendment Retaliation (Count I), and Fourteenth Amendment violation – arbitrary expulsion from school (Count II). Defendant Archuleta is identified alongside the Espanola Municipal School District in the caption for each of these causes of action. Defendant Archuleta is entitled to qualified immunity on all asserted counts against her.

## II.   LEGAL STANDARD

Summary judgment may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Johnson v. State Farm Mut. Auto. Ins. Co., 158 Fed. Appx. 119, 121 (10th Cir. 2005) (Unpublished). Once the moving party makes a showing of the absence of a genuine issue of material fact, the nonmoving party has the burden to come forward with evidence showing there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Foster v. AlliedSignal Inc., 293 F.3d 1187, 1194-1195 (10th Cir. 2002).

## III.   QUALIFIED IMMUNITY STANDARD

Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." A.M. ex rel Youngers v. NM Dep't of Health, 65 F.Supp.3d 1206, 1246 (DNM 2014); Pearson v. Callahan, 555 U.S. at 231, 129 S.Ct. 808 (quoting Harlow v. Fitzgerald, 457 U.S. at 818, 102 S.Ct. 2727). Qualified immunity also shields officers who have "reasonable, but mistaken beliefs," and operates to protect officers from the sometimes "hazy border[s]" of the law. Saucier v. Katz, 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). When a defendant asserts qualified immunity, the plaintiff must demonstrate: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged misconduct. See Riggins v. Goodman, 572 F.3d 1101, 1107 (10th Cir.2009).

"To reach the question of whether a defendant official is entitled to qualified immunity, a court must first ascertain whether the plaintiff has sufficiently asserted the violation of a constitutional right at   all." Martinez   v.   Mafchir, 35   F.3d   1486,   1490   (10th   Cir.1994)

(citing Siegert v. Gilley, 500 U.S. 226, 231–32, 111 S.Ct. 1789, 1792–93 (1991)). This requires the district court to "first determine whether plaintiff's allegations, if true, state a claim for a violation of a constitutional right that was clearly established when defendant acted." Bisbee v. Bey, 39 F.3d 1096, 1100 (1994) (citing Siegert, 500 U.S. at 232, 111 S.Ct. at 1793).

In order to carry his burden, the plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it. Hannula v. City of Lakewood, 907 F.2d 129, 131 (1990) (overruled on other grounds). Rather, the plaintiff must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity, Pueblo Neighborhood Health Ctrs. v. Losavio, 847 F.2d 642, 645 (10th Cir.1988), and "demonstrate a 'substantial correspondence between the conduct in question and prior law ... establishing that the defendant's actions were clearly prohibited.'" Hovater v. Robinson, 1 F.3d 1063, 1066 (1993) (quoting Hannula, 907 F.2d at 130). "Unless such a showing is made, the defendant prevails." Losavio, 847 F.2d at 646; see also Hannula, 907 F.2d at 131. "Once the plaintiff has sufficiently alleged the conduct violated clearly established law, then the defendant bears the burden, as a movant for summary judgment, of showing no material issues of fact remain that would defeat the claim of qualified immunity." Walter v. Morton, 33 F.3d 1240, 1242 (1994); see also Fed.R.Civ.P. 56(c).

When determining whether a state official is entitled to qualified immunity, the Court must first determine whether Plaintiff successfully alleged facts showing the violation of a constitutional right by the state official, and whether there is a genuine issue of material fact that the violation occurred.  Porter v. Ascension Parish School Bd., 393 F.3d 608, 613-14 (2004).  If there is no constitutional violation, the inquiry ends.  Id.

3

If the Court determines that Plaintiff's facts make out a constitutional violation, the Court can then ask whether the right allegedly violated was "clearly established" such that it would be clear to a reasonable official that her conduct was unlawful in the situation she confronted.  Id. at 614.  Even if the Court finds that the right was clearly established at the time of the alleged violation, a defendant will still be entitled to qualified immunity if the defendant's conduct was objectively reasonable in light of clearly established law at the time of the violation.  Id.

## IV.    UNDISPUTED MATERIAL FACTS

1.   Plaintiff Billy Jones created and/or brought a hit list to school and had it out during his class with teacher, Josephina Litera.  See Affidavit of Dr. Fidel Trujillo (Exhibit A) at ¶ 4.

2. Other students in Ms. Litera's class saw the hit list and alerted Ms. Litera that they were afraid.  Id. at ¶ 5.

3. Ms. Litera then alerted school administration as she was concerned there was something wrong with Plaintiff's health.  Id. at ¶ 6.

4. Plaintiff was then called into administration regarding this incident, where his mother was also present.  Id. at ¶ 7.

5. Plaintiff admitted to administration that the hit list was his and that the names on the list were of students who picked on him or bugged him.  Id. at ¶ 8.

6. When questioned about whether Plaintiff would be violent toward himself, he responded that he did not think so, but sometimes he did not know what he was thinking in his head.  Id. at ¶ 9.

7. Plaintiff's mother, also told administration that Plaintiff could be violent and that two weeks prior to this incident had placed his hands around her throat and grabbed her arms.  Id. at ¶ 10.

8. Plaintiff's mother also showed the bruises on her arms, which were in the healing processes. Id. at ¶ 11.

9. When Plaintiff was questioned about whether he could potentially injure any of the students on his hit list, he responded that he did not know. Id. at ¶ 12.

10. Administration was concerned that Plaintiff would act out what he had drawn. Id. at ¶ 13.

11. Plaintiff was then suspended from school and the District set an expulsion hearing for him. Id. at ¶¶ 14-15.

12. Based upon the evidence at the expulsion hearing, the hearing officer, Dr. Fidel Trujillo recommend that Superintendent Archuleta expel Plaintiff from school for the remainder of the 2010-2011 school year. Id. at ¶ 16.

13. Superintendent Archuleta then expelled Plaintiff from school for the remainder of the 2010-2011 school year. See Expulsion Letter (Exhibit B).

14. Plaintiff exercised his right to have the Espanola School Board review his expulsion and they upheld the expulsion. See School Board Review Letter (Exhibit C).

## V.    ARGUMENT

### 1. Defendant Archuleta is entitled to Qualified Immunity under Plaintiff's First Amended Claims against her.

In this Circuit, restrictions on student speech in public schools are analyzed under one of two standards. Taylor v. Roswell Independent School District, 713 F.3d 25, 35-36 (2013). Tinker governs private student speech and Hazelwood governs school-sponsored speech. Id; Tinker v. Des Moines, 393 U.S. 503, 89 S.Ct. 733 (1969); Hazelwood School District v. Kuhlmeier, 484 U.S. 260, 108 S.Ct. 562 (1988). Private student expression that is unconnected to any school-sponsored activity is subject to the more stringent Tinker standard. Taylor, 713 F.3d at 36.

Here, Plaintiff's creation of a hit list at school was not connected to any school-sponsored

5

activity.  Therefore, the <u>Tinker</u> standard applies in this case.

Under <u>Tinker</u>, a public school may not restrict private student expression unless the school reasonably forecasts it would materially and substantially interfere with the requirements of appropriate discipline in operation of the school, or impinge upon the rights of other students.  <u>Id</u>. A disruption need not actually materialize, as school officials may act to prevent problems as long as the situation might reasonably lead authorities to forecast substantial disruption or interference with the rights of others.  <u>Id</u>. at 36-37.  This forecast must be reasonable.  <u>Id</u>. at 37.  Officials may not restrict speech based on undifferentiated fear or apprehension of disturbance or a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint.  <u>Id</u>.

For a school's forecast to be reasonable, courts generally require that it be based on a concrete threat of substantial disruption.  <u>Id</u>.  When the speech is neither passive nor silent, restrictions are more readily upheld.  <u>Id</u>.

While Defendant Archuleta maintains that <u>Tinker</u> applies in this lawsuit, it is anticipated that Plaintiff will argue that a true threat analysis applies as they argue that the hit list was prepared off school premises.  However, Defendant Archuleta will be entitled to qualified immunity under a true threat analysis as well.

Under the true threat analysis, the government can proscribe a true threat of violence without offending the First Amendment.  <u>Porter</u>, 393 F.3d at 616.  Speech is considered a true threat, and therefore unprotected, if an objectively reasonable person would interpret the speech as a serious expression of an intent to cause a present or future harm.  <u>Id</u>.  The protected status of the threatening speech is not determined by whether the speaker had the subjective intent to carry out the threat; rather, to lose the protection of the First Amendment and be lawfully punished, the threat must be intentionally or knowingly communicated to either the object of the threat or a third

person.  Id.  Importantly, whether a speaker intended to communicate a potential threat is a threshold issue, and a finding of no intent to communicate obviated the need to assess whether the speech constitutes a true threat.  Id.

In Porter, the plaintiff made and kept the threatening drawing at home, and therefore, it did not constitute a true threat.  Id. at 617-618.  The only way the threatening drawing made it to school was the plaintiff's brother unwittingly took the book that the drawing was in to school.  Id. at 615.

However, an Eighth Circuit decision proscribes what type of actions constitutes intentional communication.  In Doe v. Pulaski County Special School District, 306 F.3d 616, 619 (2002), the student drafted two letters to his former girlfriend containing violent, misogynic, and obscenity-laden rants expressing a desire to assault and murder her.  See also Porter, 393 F.3d at 617.  Months later, the student's friend discovered the letters and after first objecting, the student allowed his friend to read them.  Doe, 306 F.3d at 619-20; Porter, 393 F.3d at 617.  The friend later absconded with one of the letters and showed it to the girlfriend.  Id.  In addition, the student had discussed the letters with his former girlfriend in phone conversations and admitted that he drafted them.  Id.

The Eighth Circuit held that the student intentionally communicated the threat based upon the fact that he had let his friend read the letters and discussed them with his girlfriend.  Doe, 306 F.3d at 624-25; Porter, 393 F.3d at 617.

Here, Plaintiff intentionally communicated his hit list by bringing it to school and having it out in class.  See UMF Nos. 1-3.  Accordingly, even under a true threat standard Defendant Archuleta would be entitled to qualified immunity.

Still, Defendant Archuleta maintains that the Tinker standard applies in this case, and will analyze it under that standard.

> **a. Plaintiff's First Amended Right to draw a list on campus was not clearly established and there is no genuine issue of material fact that Plaintiff's First Amendment Rights were violated.**

To be "clearly established" the contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right. Albright v. Rodriguez, 51 F.3d 1531, 1535 (1995) (citations omitted). A public school administrator will be afforded qualified immunity when there is an absence of clearly established law demonstrating that a course of action violates a student's constitutional rights. Qualified immunity should be recognized if officials of reasonable competence could disagree on whether the particular action was lawful. Hope v. Peizer, 536 U.S. 730, 752 (2002). The Supreme Court has observed that the protection afforded by qualified immunity is broad, protecting "all but the plainly incompetent or those who knowingly violate the law." Id.

Neither the 10th Circuit, nor New Mexico District Courts, appear to have directly confronted the facts plead in this case that attempts to insulate "disturbing" drawings as therapy when the school district considers the drawing and list of names as threatening to students at the school. This absence of clearly established law, alone, is sufficient to merit the qualified immunity for Defendant Archuleta on all counts asserted against her.

To the contrary, West held that a School District suspending a student for drawing a picture of the Confederate flag during class in violation of the school district's harassment and intimidation policy was not a First Amendment violation. 206 F.3d 1358, 1365-1366 (10th Cir. 2000). The tombstone and other "disturbing" drawings are at least as disruptive as the drawing in West. Moreover, the weight of authority in other districts confronting this issue reinforces dismissing Defendant Archuleta on qualified immunity grounds.

In <u>D.F. v. Board of Ed. of Syosset Central School District</u>, a public school student kept, and then brought to the school, a journal depicting similar scenes of death and killing. 386 F.Supp. 2d 119 (USDC-E.D.NY 2005).   In <u>D.F.</u>, the plaintiff asserted a similar interference with First Amendment rights.   The Court holds that the question is whether the school administrators had "reasonable grounds for fearing the plaintiff might carry out the act described." <u>Id</u>., at 128.   In <u>D.F.</u>, the Court determined that the school administrator's fear created by the student's journal was reasonable. <u>Id</u>.   The analysis is from the school administrator's point of view, and not the students. The facts concerning the nature of the potential threat and the school's reaction in <u>D.F.</u> parallel the facts in this case.   The similarity to <u>D.F.</u> supports the same legal conclusion that the decision to expel Plaintiff was reasonable.

Here, it is undisputed that Plaintiff intentionally brought his hit list to school and had it out in class.  <u>See</u> UMF No. 1.  Students in that class saw the hit list and alerted the teacher.  <u>See</u> UMF No. 2.  The teacher, Ms. Litera, then notified administration about the issue with Plaintiff, which led to Plaintiff being called into the office.  <u>See</u> UMF No. 3.  It is clear that Plaintiff's actions were substantially disruptive to the school.

Accordingly, there is no evidence that Plaintiff's First Amendment Right to create a hit list at school was clearly established.  Therefore, it is undisputed that Plaintiff's First Amended Rights were not violated.

**b. Defendant Archuleta's conduct was objectively reasonable under the circumstances.**

For the purposes of this Motion only, even if we accepted as true Plaintiff's classification of the disturbing drawings and list of classmate names as therapeutic art (Second Amended Complaint at ¶¶ 34-70), the Court should nonetheless afford Defendant Archuleta qualified

immunity on the grounds that reasonable administrators could reach different conclusions regarding the disruptive effect and threatening nature of the drawing and list of names.

The recent Tenth Circuit case of <u>Taylor v. Roswell Ind. School District</u>, *supra*, and its focus on the potential for school disruption as a reasonable basis to limit certain types of student speech on a public school campus is aligned with the "reasonability" analysis as the Court used in <u>D.F.</u>

School administrator's reacting to a "disturbing" drawing is reasonable in order to protect the students and, thus, qualified immunity should apply to Ms. Archuleta.  There is no case law found which demonstrates a countervailing approach.

Here, it is undisputed that Plaintiff intentionally brought his hit list to school and had it out in class.  <u>See</u> UMF No. 1.  Students in that class saw the hit list and alerted the teacher.  <u>See</u> UMF No. 2.  The teacher, Ms. Litera, then notified administration about the issue with Plaintiff, which led to Plaintiff being called into the office.  <u>See</u> UMF No. 3.  It is clear that Plaintiff's actions were substantially disruptive to the school.

Plaintiff's actions then led to his suspension.  <u>See</u> UMF Nos. 1-11.  He was then afforded a due process hearing to determine punishment based upon this substantial disruption.  <u>Id</u>. The hearing ultimately led to Plaintiff's expulsion from school.  <u>See</u> UMF Nos. 12-14.  In light of the circumstances before her, Ms. Archuleta's actions were reasonable under the First Amendment. Accordingly, Ms. Archuleta is entitled to qualified immunity on the First Amendment issues.

**2. Defendant Archuleta is entitled to Qualified Immunity under Plaintiff's Fourteenth Amendment – Arbitrary Expulsion from School Claims against her.**

Count II of the Second Amended Complaint alleges a Fourteenth Amendment violation against Defendant Archuleta for arbitrary expulsion from school.  Plaintiff alleges that he had a property right in a free public education and his expulsion from school violated this property right. Second Amended Complaint at Count II.

10

Porter is also instructive in addressing this Fourteenth Amendment due process claim. In Porter, the Fifth Circuit applied the Supreme Court's holding in Goss v. Lopez, that in the public school context, expulsion requires, at a minimum, a hearing and notice. 419 U.S. 656, 571-572 (1975). Goss has been consistently applied in this Circuit for nearly forty years.

On its face, Plaintiff's Second Amended Complaint set forth allegations dispositive of the Fourteenth Amendment claim. First, Mr. Jones admitted that the drawings were his. See UMF No. 5; Second Amended Complaint at ¶ 41. This can have the effect of mitigating the need for a hearing. Watson v. Beckel, 242 F.3d 1237 (10th Cir. 2001) (There was no constitutional violation for a student was expelled without a hearing because he admitted his guilt). Second, Plaintiff also alleges that a hearing was conducted. Second Amended Complaint at ¶¶ 58-61, 88. Accordingly, on the face of the Second Amended Complaint, the Goss due process requirements were met.

Further, there is no evidence to suggest that expelling a student creating and bringing an perceived hit list on school grounds "shocks the conscience" sufficient to establish a substantive due process violation. See Seamons v. Snow, 84 F.3d 1226, 1236 (10th Cir. 1996). There is also no evidence that the process used to expel Mr. Jones shocked the conscious and there are not sufficient allegations set forth in the Amended Complaint to infer any such "conscience shocking" actions. Additionally, as discussed above, the facts alleged by Plaintiff concerning the tombstone and other "disturbing" drawings are on par with the drawing in West.

Rather, the evidence in this case shows that Plaintiff's right to a free public education was not violated. Plaintiff prepared and brought a hit list to school. See UMF No. 1. This hit list effected the other students such that they complained to their teacher. See UMF No. 2. Once administration began investigating this hit list further, it was determined that Plaintiff may be a danger not only to himself, but potentially others. See UMF Nos. 6-9. Accordingly, Plaintiff was

11

suspended, then had a due process hearing on potential expulsion.  <u>See</u> UMF No. 11-12.  Plaintiff

also exercised his right to have the School Board review his expulsion, and they determined to

uphold it.  <u>See</u> UMF No. 14.  Therefore, Plaintiff was afforded every right in this case, and there

is no evidence that the expulsion shocks the conscience sufficiently to establish a due process

violation.

## VI.    <u>CONCLUSION</u>

WHEREFORE, Defendant Janette Archuleta respectfully requests that this Court enter an

Order granting her Motion for Summary Judgment on Qualified Immunity and dismissing

Plaintiff's Second Amended Complaint [Doc. 68] against her with prejudice, and for such other

and further relief as the Court may deem just and proper.

Respectfully submitted,

**NARVAEZ LAW FIRM, P.A.**

 */s/  Carlos E. Sedillo*
HENRY F. NARVAEZ
CARLOS E. SEDILLO
*Attorneys for School Defendants*
P.O. Box 25967
Albuquerque, New Mexico 87125-0967
T: (505) 248-0500

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing
electronically through CMECF,
which caused the following parties or
counsel to be served by email,
on November 17, 2015 to:

Joseph P. Kennedy
Shannon L. Kennedy
KENNEDY LAW FIRM
Attorneys for Plaintiff
1000 Second Street NW
Albuquerque, New Mexico 87102


 _/s/  Carlos E. Sedillo_____
CARLOS E. SEDILLO