IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BILLY JONES,

      Plaintiff,

v.                                          No. 1:13-cv-0741 RB/WPL

ESPAÑOLA MUNICIPAL SCHOOL DISTRICT,
and SUPERINTENDENT JANETTE ARCHULETA,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Defendant's Motion for Summary Judgment on Qualified Immunity by Defendant Janette Archuleta. (Doc. 84.) Jurisdiction is based on 28 U.S.C. § 1331. Having considered the submissions of counsel and relevant law, the Court will **GRANT** this motion.

### I. Background

On September 7, 2010, Plaintiff was a student at Española Valley High School in Española, New Mexico. School officials found notes and drawings in Plaintiffs' backpack that "contained images of tombstones with students' names and other negative imagery." (Second Am. Compl., Doc. 68 ¶ 40.) The notes and drawings included a "list of children who bugged" Plaintiff. (*Id.* ¶ 41.) Plaintiff's therapist had advised Plaintiff and his mother that his drawings "were therapeutic and could help him cope with the stress of being bullied at school." (*Id*.) Plaintiff was subsequently expelled by Defendants for "improper behavior." (*Id.* ¶ 50.)

On August 9, 2013, Plaintiff filed suit in this Court alleging that the expulsion violated his constitutional rights and sought damages, attorneys' fees, and costs under 42 U.S.C. § 1983. (Compl., Doc. 1.) On January 21, 2015, Plaintiff filed a Second Amended Complaint alleging that (1) Defendants' decision to expel him was in retaliation for the exercise of his First Amendment rights; (2) Defendants' decision to expel him for constitutionally protected activity deprived him of due process under the Fourteenth Amendment; and (3) Defendant Española Municipal School District violated Plaintiff's rights under the Americans with Disabilities Act. (Doc. 68.) Defendant Archuleta moves for summary judgment on all claims against her, arguing that she is entitled to qualified immunity. (Doc. 84.) Plaintiff opposes the motion. (Doc. 137.)

## II.   Legal Standard

Summary judgment is appropriate when the Court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56. In cases where the moving party will not bear the burden of persuasion at trial, the moving party bears the initial responsibility of identifying an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden on the moving party may be discharged by demonstrating that there is an absence of evidence to support the nonmoving party's case. *Id.* Once the moving party meets this burden, Rule 56(e) "requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Id*. at 324.

In considering a summary judgment motion, the Court determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). On summary judgment, the Court must view the record in the light most favorable to the non-moving party. *See Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 34 (10th Cir. 2013)

## III.  Statement of Facts

In January 2010, Plaintiff transferred to Española Valley High School as a freshman.[1] (Affidavit of Billy Jones, Doc. 137-2.) On January 22, 2010, another student assaulted Plaintiff on the school bus. (*Id.* ¶¶ 2–5.) The other student was the son of the principal of Española Middle School. (Second Am. Compl. ¶¶ 16, 25.) The other student attended school the next day and he was not expelled from Española Valley High School. (*Id.* ¶¶ 26, 27.) However, the other student was charged as a juvenile and pleaded guilty to aggravated assault in connection with the incident. (*Id.* ¶ 27.) Plaintiff finished the spring semester at Española Military Academy. (Jones Aff. ¶ 6.) In the fall semester of 2010, Plaintiff returned to Española Valley High School because the military school closed. (*Id.* ¶ 7.)

In September 2010, a boy in Plaintiff's biology class taunted Plaintiff about the assault. (*Id.* ¶ 9.) As a result of the continuing harassment, Plaintiff's mother instructed Plaintiff to write a list of the people who "bugged" him at school so that Plaintiff and his mother could address this issue with the high school principal. (*Id.* ¶ 10.) Plaintiff made three lists. (Doc. 84-4.) On the top of one list, Plaintiff wrote "List for Hell." (Jones Aff. ¶ 12.) The "List for Hell" contained six entries: "1. Pink Whore, 2. Special Blonde, 3. Fat Ass, 3 [sic]. Chris D, 4. Chriss; 5. Austin." (Doc. 84-4.) Another list contained the following: "1. Andria, 2. Krystal, 3. Alex, 4. Mario, 5.

---
[1] Plaintiff was fifteen years old at all relevant times. (Doc. 84-3.)

3

Dustin, 6. Roberto, 7. Rosa, 8. Alexandria, 9. Chris, 10. 1 girl, 11. 1 boy, 12. 2 girl, and 13. Chris D. Trujillo." (*Id.*) The third list was entitled "List No #5" and read as follows: "1. Nathan, 2. Austin, 3. Dustin, 4. Rosa, 5. Megan, 6. Jaymes, 7. Kayla." (*Id.*) Plaintiff did not "intend hell as death, just as an end to what they were doing." (Jones Aff. ¶ 12.) The names on the lists included the boy in biology class who taunted Plaintiff and the boy's girlfriend. (*Id.* ¶ 13.)

In addition to the lists, Plaintiff created artwork that he describes as storyboards for a horror movie which "depicted people with decapitated heads, little tombstones, stuff like saying 'rest in peace' but not anything like a threat, just imagination." (Jones Aff. ¶ 19.) Plaintiff's artwork depicted four tombstones, which read: "RIP – Jolene Benson – Pink Whore; RIP – Ismaiel [sic] – Fat Ass; RIP Austin C; RIP Chris D. Trujillo – Mexican Hitler." (Second Am. Compl. ¶ 41.) Another drawing shows a torture chamber, two people in restraints (one with the name "Angel" on her shirt), a stabbed person on the floor, and two severed heads on a shelf. (*Id.*) Other drawings depict a boy wearing a shirt emblazoned "unleash hell." (*Id.*) A series of drawings show the boy in the "unleash hell" shirt burning a person, beating an object hanging from a tree, and chopping off a person's head. (*Id.*) The lists and the drawings were on loose leaf paper in a booklet in Plaintiff's backpack. (Deposition of Billy Jones, Doc. 140-1 at 18.)

In the Second Amended Complaint and his response brief, Plaintiff asserts that he did not voluntarily disclose the lists or the drawings to anyone at Española Valley High School. (Doc. 68 ¶¶ 39, 55; Doc. 137 at 4–5, 7.) However, Plaintiff testified in his deposition that he worked on the drawings and the lists at school four or five times in the week leading up to September 7, 2010. (Deposition of Billy Jones, Doc. 140-1 at 18–19.) Additionally, Plaintiff testified in his deposition that, on September 7, 2010, Plaintiff worked on the drawings and the lists at a

4

classroom table with three other students. (*Id.* at 21.) Plaintiff testified in his deposition that these three students saw the drawings and the lists. (*Id.*)

On September 7, 2010, Plaintiff's teacher, Josefina Litera sent an e-mail message to School Counselor Gloria Champion. (Doc. 84-5.) The e-mail message indicated that Ms. Litera saw Plaintiff's hands shaking which Plaintiff explained was caused by missing breakfast. (*Id.* at 6.) However, a female student commented that Plaintiff was "rolling his eyes and making a list and her name was on the list." (*Id.*) Ms. Litera told the girl that she was probably "on the list because she is noisy and laughing." (*Id.*) Nonetheless, two female students stated that they were afraid of Plaintiff. (*Id.*) In the e-mail message, Ms. Litera asked the school counselor "look into [Plaintiff's] record if there is something wrong with his health." *Id.*

Ms. Champion forwarded Ms. Litera's e-mail message to Assistant Principal Devanna Ortega. (Doc. 84-6.) Ms. Ortega had Plaintiff escorted to her office and called Plaintiff's mother. (*Id.*) Ms. Ortega, Plaintiff's mother, School Resource Officer Danny Pacheco, School Psychologist Dr. Lloyd Vigil, School Security Officer Chris Archuleta, and School Security Officer Alexandra Rosas met with Plaintiff. (Doc. 84-2; Doc. 84-3) During the meeting, Plaintiff's backpack was searched and the lists and drawings were confiscated. (Doc. 84-3.) Plaintiff's mother explained that Plaintiff was working on drawing movie storyboards at home and did not intend to harm anyone. (*Id.*) Plaintiff's mother elaborated that Plaintiff's therapist suggested that Plaintiff should draw and write "as a way to relive [sic] the stress of being bullied at school." (*Id.*) Plaintiff's mother also stated that the students on the lists had verbally and physically threatened Plaintiff. (*Id.*)

When asked if he was going to hurt or injure himself, Plaintiff responded "I don't think so" but that sometimes he did not know what he was thinking in his head. (Doc. 84-3.) When

asked if he thought he could hurt any of the students on the list, Plaintiff stated that he "did not know." (*Id.*) When asked if he would kill himself, Plaintiff stated: "I don't know sometimes I think that's the only way out." (*Id.*)

The school administrators were concerned that Plaintiff would act out what he had drawn. (Doc. 84-1 ¶13.) Plaintiff was suspended from school through September 22, 2010 for threatening bodily injury to others on school property. (Doc. 84-7.) On September 16, 2010, Principal Arthur Salazar sent Plaintiff's parents a letter notifying Plaintiff's parents that a hearing on the question of potential suspension or expulsion was set on September 22, 2010. (*Id.*) The letter notified Plaintiff's parents that Plaintiff could be suspended or expelled from school for up to one calendar year. (*Id.*) The letter further stated that Plaintiff's parents had the right to have an attorney present, the right to cross-examine adverse witnesses, and the right to call witnesses on Plaintiff's behalf. (*Id.*) The letter stated that the hearing would be recorded and the Superintendent's decision would be based on the hearing officer's findings of fact and law. (*Id.*) Mr. Salazar stated in the letter that his recommendation to the Hearing Officer was that Plaintiff be suspended or expelled for the 2010–2011 school year. (*Id.*)

Assistant Superintendent Dr. Fidel Trujillo served as the hearing officer. (Doc. 84-8.) Ms. Ortega presented evidence on behalf of the school district and attorney Shannon Kennedy presented Plaintiff's case via telephone. (Doc. 84-2.) School Resource Officer Danny Pacheco, Teen Court Coordinator John Trujillo, Dr. Vigil, and Mr. Salazar testified for the school district. (*Id.*) Plaintiff's parents, Cecelia Jones and Timothy Jones, testified for Plaintiff. (*Id.*) Both parties presented documentary evidence. (*Id.*)

Based on the testimony and evidence at the hearing, Dr. Trujillo found by a preponderance of the evidence that Plaintiff was the author of a student list; Plaintiff admitted to

drawing pictures depicting violence toward students whom he believed to have harmed him in the past; Plaintiff harbored thoughts of harming the persons depicted in the drawings, and that the writings and/or drawings contained abusive language. (*Id.*)

Dr. Trujillo found that Plaintiff had violated the Española School District Policy for Student Conduct (Policy J-2300 JIC) that prohibits physical abuse or threat of harm to any person and speech that violates commonly accepted standards and has no redeeming value on school property or at school-sanctioned events. (*Id.*) Additionally, Dr. Trujillo cited Española School District Policy for Student Conduct (Policy J-4611 JKR) that provides that a student may be subject to disciplinary action when the student endangers the safety, morals, health, or welfare of others by using profane, vulgar, or abusive language on school property or at school-sanctioned events. (*Id.*) Dr. Trujillo determined that Plaintiff posed a threat to other students and to Plaintiff. (*Id.*) Dr. Trujillo recommended expulsion for the remainder of the 2010–2011 school year. (*Id.*)

On September 29, 2010, Defendant Archuleta expelled Plaintiff from school for the remainder of the 2010–2011 school year. (Doc. 84-9.) Defendant Archuleta stated that Plaintiff had violated Española School District Policy for Student Conduct (Policy J-2300 JIC) and (Policy J-4611 JKR) based on the findings of Dr. Trujillo. (*Id.*)

Through counsel, Plaintiff's parents appealed to the Española Board of Education. (Doc. 84-10.) On November 17, 2010, the School Board upheld the expulsion. (*Id.*)

**IV. Discussion**

    **A. Qualified Immunity**

Qualified immunity is an affirmative defense to Section 1983 claims. *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001). Qualified immunity shields government officials "from

liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Dodds v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Because qualified immunity is not only a defense to liability, but immunity from suit, "it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

At the summary judgment stage in qualified immunity cases, a "plaintiff must demonstrate on the facts alleged (1) that the defendant violated his constitutional or statutory rights, and (2) "that the constitutional right was 'clearly established' at the time of the alleged unlawful activity." *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011)). Failure on either element is fatal to the plaintiff's Section 1983 claims. *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011). "In other words, if the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense." *A.M. v. Holmes*, 2016 WL 3999756 *6 (10th Cir. Jul. 25, 2016) (citing *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877–78 (10th Cir. 2014)). The court may decide either prong first. *See Pearson*, 555 U.S. at 236.

In determining whether the plaintiff has satisfied the two-pronged qualified-immunity showing, the court ordinarily accepts the plaintiff's version of the facts. *See Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). However, because the summary judgment stage is "beyond pleading phase of the litigation, [the] plaintiff's version of the facts must find support in the record." *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "As with any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should

not adopt that version of the facts.'" *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

### B. First Amendment Claim

The Supreme Court has explained that "the purpose behind the Bill of Rights, and of the First Amendment in particular, is to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995). Thus, "the First Amendment bars retaliation for protected speech." *Crawford–El v. Britton*, 523 U.S. 574, 592 (1998). In order to prevail on the merits of his First Amendment retaliation claim, Plaintiff must prove "(1) that [he] was engaged in constitutionally protected activity; (2) that defendant's actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (internal quotations omitted). Defendant contends that she is entitled to qualified immunity on this claim because Plaintiff cannot demonstrate that he was engaged in a constitutionally protected activity.

Public school students are protected by the First Amendment and do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). However, schools may restrict speech that "might reasonably [lead] school authorities to forecast substantial disruption of or material interference with school activities" or that collides "with the rights of other students to be secure and to be let alone." *Id.* at 508, 514. Where speech "for any reason . . . materially disrupts classwork or involves substantial disorder or invasion of the rights of others," school officials

9

may limit the speech. *Id.* at 513. Although an actual disruption is not required, school officials must have more than an "undifferentiated fear or apprehension of disturbance" to overcome the student's right to freedom of expression. *Id.* at 508. School officials may act to prevent problems as long as the situation might reasonably lead authorities to forecast substantial disruption or interference with the rights of others. *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 36–37 (10th Cir. 2013).

In this case, Plaintiff created a "List for Hell" and other lists naming students who "bugged" him. Plaintiff created artwork depicting extreme violence and tombstones with the names of fellow students. Plaintiff worked on these materials during class in plain view of his classmates. Other students noticed Plaintiff's artwork and informed the teacher that they were afraid of Plaintiff. The teacher alerted school administrators who called the police. Plaintiff admitted that he created the lists and the artwork. Plaintiff admitted that the names on the lists were of students who bugged him. When Plaintiff was questioned about potential violence towards himself or others, he indicated that he did not know whether he could be violent to himself or others, or harm himself or others. On these facts, a school administrator could reasonably portend substantial disruption and possible violence against other students. Defendant Archuleta reasonably could have concluded that the lists and drawings would materially and substantially interfere with the requirements of appropriate discipline in the operation of the school. Under these circumstances, Plaintiff's artwork and lists were not protected by the First Amendment. Upon Defendant Archuleta's assertion of qualified immunity, Plaintiff was required to come forward with facts to establish a violation of a clearly established constitutional right. Plaintiff has not established that the actions of Defendant Archuleta violated a clearly established right with respect to his First Amendment claims. Thus, Defendant Archuleta's decision to expel

Plaintiff did not violate Plaintiff's right under the First Amendment. As there was no constitutional violation, Defendant Archuleta is entitled to qualified immunity on Plaintiff's First Amendment claim.[2]

### C.     Due Process Claims

The Due Process Clause of the Fourteenth Amendment protects persons against deprivations of "life, liberty, or property." U.S. Const. amend. XIV, § 1. In *Goss v. Lopez*, the Supreme Court recognized that public education is a property interest entitled to protection by the Due Process Clause. 419 U.S. 565, 574 (1975). The Court held that "[w]hen complete deprivation of education occurs, such as when a student is removed from the school for a lengthy time period," the student at minimum is entitled to "notice and . . . some kind of hearing," though the "timing and content of the notice and the nature of the hearing will depend on the appropriate accommodation of competing interests involved." *Id.* at 578–79. "All that is necessary" to satisfy procedural due process "is that the procedures be tailored, in light of the decision to be made, to 'the capacities and circumstances of those who are to be heard,' to insure that they are given a meaningful opportunity to present their case." *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976).

In this case, Plaintiff received adequate notice and a hearing. At the hearing, his attorney was permitted to cross examine adverse witnesses and present evidence. Although Dr. Trujillo had knowledge of the incident and Mr. Salazar's preferred outcome before the hearing, Dr. Trujillo was not directly involved in the investigation of Plaintiff's conduct. Notably, Plaintiff admitted that he created the lists and artwork and the names on the lists were of students who

---

[2] In that the broader *Tinker* standard applies, it is unnecessary to decide whether the drawings and lists also constitute a "true threat" under the narrower standard of *Watts v. United States*, 394 U.S. 705 (1969) (holding hyperbolic threats on the President's life were not "true threats" in criminal prosecution). *See Bell v. Itawamba Cnty. Sch. Bd.*, 799 F.3d 379, 400 (5th Cir. 2015) (finding it unnecessary to decide whether student's off-campus rap video also constituted a "true threat" because recording reasonably could have been forecast to cause a substantial disruption of the school).

bugged him. The record, construed in the light most favorable to Plaintiff, does not establish a procedural due process violation. Upon Defendant Archuleta's assertion of qualified immunity, Plaintiff was required to come forward with facts to establish a violation of a clearly established constitutional right. Plaintiff has not established that the actions of Defendant Archuleta violated a clearly established constitutional right. Defendant Archuleta is entitled to qualified immunity on Plaintiff's procedural due process claim.

Plaintiff's substantive due process claim fares no better. In order to establish a substantive due process violation, a plaintiff must demonstrate that the government action was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998). Notably, the scope of substantive due process is very limited. *See Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997). The Supreme Court has explained that it is "reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992).

In the context of public schools, the Supreme Court "has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools." *Tinker*, 393 U.S. at 507. "It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion." *Wood v. Strickland*, 420 U.S. 308, 326 (1975). The Tenth Circuit has explained that, absent certain factors not present here, courts "will uphold a school's decision to discipline a student in the face of a substantive due process challenge if the decision is not arbitrary, lacking a rational basis, or shocking to the conscience of federal judges." *Butler v. Rio Rancho Pub. Sch. Bd. Educ.*, 341

F.3d 1197, 1200 (10th Cir. 2003); *see also Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998).

Plaintiff suggests that the length of the suspension violated his substantive due process rights. In this regard, "[a] school administration's decision to suspend a student will provide a basis for a substantive due process claim only in the very rare case when there is no rational relationship between the punishment and the offense." *Rosa R. v. Connelly*, 889 F.2d 435, 439 (2d Cir.1989); *see also Tun v. Whitticker*, 398 F.3d 899, 904 (7th Cir. 2005); *Brewer v. Austin Indep. School Dist.*, 779 F.2d 260, 264 (5th Cir. 1985); *DeFabio v. East Hampton Union Free Sch. Dist.*, 658 F.Supp.2d 461, 486 (E.D.N.Y. 2009). Here, Defendant Archuleta's decision to suspend Plaintiff for the remainder of the school year was supported by findings that Plaintiff admitted that (1) he created the lists and the artwork; (2) the names on the lists were of students who bugged him; (3) when Plaintiff was questioned about potential violence he stated that he did not know whether he could harm himself or others. These findings indicate that Plaintiff presented a danger to students. Under these circumstances, Plaintiff has not established that the punishment bore no rational relationship to Plaintiff's conduct or that her decision was arbitrary.

Defendant Archuleta had a legitimate interest in protecting the students at Española Valley High School from the Plaintiff's threats of harm on school property. Plaintiff has not shown that Defendant Archuleta's decision was arbitrary, lacked a rational basis, or was conscience-shocking. Upon Defendant Archuleta's assertion of qualified immunity, Plaintiff was required to come forward with facts to establish a violation of a clearly established constitutional right. Plaintiff has not met this burden. Accordingly, this Court finds that Defendant Archuleta's decision to expel Plaintiff for the remainder of the 2010–2011 school year was not a substantive

due process violation. Defendant Archuleta is entitled to qualified immunity from Plaintiff's substantive due process claim.

### V.     Conclusion

Defendant Archuleta is entitled to qualified immunity on the claims against her.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment on Qualified Immunity by Defendant Janette Archuleta (Doc. 84) is **GRANTED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**